## STEPHENSON, *Appellant*, v. PARKER STATIONERY COMPANY *et al.*

### Division One, December 7, 1897.

1. **Conflicting Attachments:** PURPOSE OF SECTION 570, REVISED STATUTES 1889. Section 570, Revised Statutes 1889, contemplates that the court in a summary proceeding shall determine only such controversies as may arise between different attachment plaintiffs in relation to the property attached and levied upon. This statute limits the power of the court to a determination of controversies touching the priority, validity, good faith and effect of different attachments as they relate to the property attached, and does not permit it to determine all controversies that may arise between different attachment creditors growing out of the manner of the creation of the debts or claims on which the attachments are based.

2. **Priority of Attachments.** Priority of attachment liens is a question of time, and not a question of priority of equities growing out of agreements in no way connected with the attachment proceedings.

3. ————. An attachment which is first in point of time, is regular in form and made to secure a valid indebtedness, must be first satisfied out of the proceeds of the attached property in the hands of the sheriff, before other attachment claims can be paid.

4. ————: CASE STATED. The plaintiff attached the property of a stationery company to pay notes amounting to $9,619.26. The defendant bank also by subsequent writ attached the same property in the same court, averring a debt of $8,174.79, and by motion asked the court to decrease plaintiff's lien to the amount of $4,500, on the ground that when it loaned the company its money plaintiff stated that he intended to buy twelve hundred shares of the company's stock for $4,500, and that this money would be paid into the capital stock of the company, and that upon this representation the bank made the loan. The evidence showed that plaintiff did pay in the $4,500, but the stock was not issued to him because it had already been hypothecated, and then the company issued to plaintiff its notes for the money paid in and other money loaned it by plaintiff, and these notes were the basis of his attachment. *Held,* that this issue could not be settled in an attachment suit, but the bank must resort to an independent action against plaintiff. *Held,* also, that if the statute gave the court power to adjust the conflicting equities between plaintiff and the bank, in a summary proceeding on the motion, it would be unconstitutional as denying plaintiff the right to a jury trial.

*Appeal from St. Louis City Circuit Court.*—HON. P. R. FLITCRAFT, Judge.

REVERSED.

*Clopton & Trembley* for appellant.

(1)    The first seven grounds of the motion of the Third National Bank are representations on which the Third National Bank might sue Stephenson and the Parkers, if the representations are false, but they certainly constitute no right in the Third National Bank to have Stephenson's attachment postponed to any claim that the Third National Bank might have had against the Parker Stationery Company, and the trial court erred in admitting testimoy in support of those grounds of the motion.   Section 570, Revised Statutes 1889, provides no warrant for sustaining a motion on such grounds. (2) There is no evidence to sustain the eighth and ninth grounds of the motion of the Third National Bank.   They amount to an allegation of fraud—fraud can not be presumed. It must be proven, and when a transaction under consideration consists as well with honesty and fair dealing as with a fraudulent purpose, it will be referred to the better motive. *Garesche v. McDonald*, 103 Mo. 1; *Ridge v. Greenwell*, 53 Mo. App. 479; *Waddingham v. Laker*, 44 Mo. 132; *Priest v. Way*, 87 Mo. 16; *Bernecker v. Miller*, 44 Mo. 102; *Dallam v. Renshaw*, 26 Mo. 544; *Funkhouser v. Lay*, 78 Mo. 458; *Page v. Dexon*, 59 Mo. 43; *Rumbalds v. Parr*, 51 Mo. 592; *Henderson v. Henderson*, 55 Mo. 534; *Webb v. Daily*, 94 Mo. 621. (3) The court had no power to hear controverted facts in the case without a jury, and a jury was not waived in this case.   Const. Mo., art. II., sec. 28; R. S. 1889, secs. 2131, 2133.

*Hainer & Rorick* for respondent.

(1) Where an absolute, unconditional representation of something to be done in the future is made by one person in order to accomplish a particular purpose, and the person to whom it is made, relying upon it, does the acts by which the intended result is obtained and purpose accomplished, a contract is thereby concluded between the parties which a court of equity will specifically enforce. 3 Pomeroy's Eq. Jur. [2 Ed.], par. 1294; *Hammersley v. De Biel*, 12 Clark & F. 45; *Dashwood v. Jermyn*, L. R. 12 Ch. Div. 776. (2) A motion under section 570 of Revised Statutes of 1889 is a proper method of procedure on the part of a subsequent attaching creditor, when a prior attaching creditor of the same debtor has attached for a greater sum than he is entitled to recover. *Patterson et al. v. Stephenson*, 77 Mo. 329; *Adler v. Anderson*, 42 Mo. App. 189; *Claflin v. Sylvester*, 99 Mo. 276; *Bank v. Brenneisen*, 97 Mo. 145; *Lane v. White*, 64 Mo. App. 196. (3) The procedure under section 570 of Revised Statutes of 1889 is equitable in its nature, and the controversy is triable by the court and not by jury. *Claflin v. Sylvester*, 99 Mo. 276; *Gilbert v. Gilbert*, 33 Mo. App. 268; *Hensley v. Baker*, 10 Mo. 157; *Erskine v. Lowenstein*, 82 Mo. 301. (4) No instructions or declarations of law were asked or given (except a motion for nonsuit), and as there is substantial evidence to sustain the judgment, great deference will be paid to the conclusion reached by the trial court. *Erskine v. Lowenstein*, 82 Mo. 301; *Chapman v. McIlwrath*, 77 Mo. 38.

ROBINSON, J.—At this suit of the plaintiff Lloyd B. Stephenson a writ of attachment was issued against the Parker Stationery Company, a corporation, and all of its goods, effects and accounts and evidences of debt,

etc., were levied upon by the sheriff. Plaintiff's claim was for $9,619.26, evidenced by fifteen notes and a small account of $50 for money loaned. Subsequently the Third National Bank of St. Louis filed its action in the same court against the same defendant, on an indebtedness aggregating $8,174.79, and caused a levy to be made upon the same property levied upon by the plaintiff Stephenson. The property so levied upon was sold by the sheriff for the sum of $7,216. The cost of sale and labor claims allowed amounted to $481.52, leaving to apply on the attachments a balance of $6,734.48. Afterward, on the twenty-third day of January, 1895, the Third National Bank filed in the case of Lloyd B. Stephenson against the Parker Stationery Company the following notice to postpone Stephenson's attachment to the extent of $4,500 in favor of the bank:

"Now comes the Third National Bank of Saint Louis, a corporation duly organized and existing according to law, and represents to this court that heretofore, to wit, on the 31st day of December, 1894, it commenced in this court a certain action against the defendant herein, the Parker Stationery Company, for the recovery of a large amount of money, to wit, $8,174.79, which action is numbered 172, to the February term, 1895, and in said action caused a writ of attachment to issue, which was duly levied upon the goods, wares, merchandise and chattels and property of the said defendant; that said levy was made upon the same goods, wares, merchandise, chattels and property that had prior thereto been attached in this action by this plaintiff, L. B. Stephenson, and the said Third National Bank now moves the court that the court inquire into the priority, validity, good faith, force and effect of said attachment in this cause, and that such attachment and the lien thereof to the extent

of forty-five hundred dollars be postponed in favor of said Third National Bank and for grounds of this its motion alleges:

"1. That heretofore, to wit, on the 10th day of March, 1894, the said L. B. Stephenson represented to this plaintiff that he, the said Stephenson, was about to become a stockholder in the Parker Stationery Company, and was about to pay into the capital stock of said Company the sum of forty-five hundred dollars for which the said corporation would issue to him shares of stock to that amount, and was about to become treasurer of said company.

"2. That at the same time said J. A. Parker and F. S. Parker concurred with said Stephenson in the foregoing representations, and likewise represented that said Stephenson was about to become a stockholder and pay into the capital stock of said Parker Stationery Company the sum of forty-five hundred dollars and become treasurer thereof.

"3. That J. A. Parker is, and was at the time aforesaid, president, and F. S. Parker, secretary and treasurer, of said corporation, and were the holders and owners of nearly the entire capital stock of said corporation.

"4. That said representations were made with the express purpose and intent of obtaining from this plaintiff the loan of a large sum of money, to wit, seventy-six hundred and ninety dollars and twenty-one cents ($7,690.21).

"5. That this plaintiff relied upon such representations, and in consequence thereof renewed a certain loan then due from said corporation to the plaintiff to the amount of seventy-six hundred and ninety dollars and twenty-one cents, and received from said corporation the two notes described in the first and second

VOL. 142 mo—2

counts of this, plaintiff's amended petition, as evidence of such renewal.

"6. That said Stephenson, in fulfillment of said representations, did pay into the capital stock of said corporation the sum of forty-five hundred dollars, and became treasurer of said corporation and remained such until November, 1894.

"7. That a large part of the alleged indebtedness of said corporation to said Stephenson, to wit, forty-five hundred dollars, consists of this sum so paid into the capital stock of said corporation.

"8. That said corporation does not owe said Stephenson the full amount in said Stephenson's petition alleged, but forty-five hundred dollars less than therein alleged.

"9. That said Stephenson, with intent to hinder, delay and defraud this plaintiff and other creditors of said corporation, procured certain promissory notes, payable on demand, to represent said forty-five hundred dollars, with the purpose and intent of fraudulently exercising the rights of a creditor of said corporation as to the said forty-five hundred dollars."

On April 8, following, the plaintiff Stephenson obtained judgment against the Parker Stationery Company for the aggregate sum of $9,989.14, and the defendant having failed to file a plea in abatement, judgment on the same day was rendered for plaintiff on the attachment.

On May 4, 1895, when the bank's motion came up for hearing, the counsel for the plaintiff Stephenson objected to the introduction of any testimony to sustain any but the eighth and ninth specifications of the motion, for the reason that if true they would not authorize the postponement of plaintiff's claim or any part thereof in favor of the bank. The objection was overruled. No testimony, however, was offered that

proved or tended to prove the allegations of specifications 8 and 9 of the motion. Nothing was shown that proved or tended to prove that as between Stephenson and the stationery company the claim sued upon and that was afterward reduced to judgment was for more than it should have been, that the stationery company did not in fact owe to Stephenson the amount indicated by the judgment, but the bank by this proceeding seeks to have postponed Stephenson's prior attachment to the amount of $4,500 to its judgment, on account of a conversation that took place just a few days prior to the tenth of March, 1894, between the president of the bank, Stephenson, and one of the Parker brothers, who owned the principal part of the stock of the stationery company, which it is alleged resulted to the detriment of the bank in the collection of its claims, on account of the extension which it was induced to give to the stationery company on its notes that were then about due. The president of the bank testified that a few days prior to March 10, 1894, Mr. Stephenson and one of the Parker brothers came into his bank, and while there Mr. Parker said that the company was in trouble and would not be able to meet its obligations with the bank when they came due, but that Mr. Stephenson was about to become a stockholder in the company and would pay into the capital stock of the company the sum of $4,500 and was to become the secretary thereof and to take entire charge of its finances if things could be satisfactorily arranged; that Stephenson practically said the same to him, and did afterward take charge of the finances of the company and act as its secretary for several months, and up to within just a short time before the institution of his attachment proceedings against the company; that neither Parker nor Stephenson explained to him from what source Stephenson was to acquire the shares of stock

he was to get, for the money that he was to put into the company; that he did not ask, and neither of them explained to him, how the arrangement was to be consummated, but that he supposed that the company was to issue its stock to Stephenson for the money to be advanced by him for the company, and that to the extent of $4,500 the capital of the company would be increased, and that on the faith of Stephenson's representations, together with those of Parker made in Mr. Stephenson's hearing, he, a few days afterward (on March 10, 1894), consented to the extension of the time of payment of the notes then held by the bank against the stationery company, by cancelling the old notes and taking new ones in their stead, less the sum of $500 in cash that was to be paid on the date of the adjustment and extension of the notes, and which amount was in fact paid by Mr. Stephenson, acting as the company's business manager.

Stephenson admits in substance the conversation detailed by the president at the bank, and further says that the Parker brothers, the sole stockholders at that time of the Parker Stationery Company, came to him a short while before his conversation with Mr. Crewes, the president of the intervening plaintiff, and promised that if he would advance for the stationery company $3,000, in addition to the loan of $500 that he had previously made to the company, to help them out of their troubles, that Joe Parker would convey to him $12,000 of the face value of the stock of the company, same being just sufficient to give him the controlling interest in the company, and that he was to be elected as the secretary of the company and have the charge of its finances; that he accepted this offer, was elected secretary of the company, and did take charge of its finances and advanced to the company all the money that he had promised, and out of it actually paid to the bank $1,600 on

its renewed notes; that after advancing to the company this money according to his agreement with the Parkers, he demanded of them the stock which they had agreed to let him have; that after putting him off from time to time, finally admitted that the stock was hypothecated and that it could not be delivered as agreed; that Joe Parker, who represented the larger part of the stock of the company, represented to him that he was negotiating the sale of a patent owned by him, out of which he expected to receive $10,000 soon, and would then repay him for the money advanced to the company; that while waiting for Parker to make his contemplated sale and in order to keep the company going and to meet its obligations, he advanced considerable money to it afteward, hoping that the Parkers would be able to carry out their part of the agreement with him, but finally feeling that he would never be able to get his stock, he demanded that the company give to him its notes for all the money that had been advanced for the use and benefit of the company by him, which was done, and that upon them the suit of attachment was based; that the president of the bank, at the time of the conversation detailed by him, asked Stephenson if he would indorse the paper of the stationery company, and that Stephenson told him that he would not —"that he would not make himself personally liable in any way for any debts of the company."

The respondent now contends that whatever might have been the agreement between Stephenson and the Parker brothers, or either of them, as to how Stephenson was to get his stock and become a stockholder in the company, and notwithstanding the failure of the Parker brothers, or either of them, to comply with their part of the agreement in transferring to Stephenson the twelve hundred shares of stock of the company for the money advanced to the company, for its benefit,

as agreed, that as to the bank he should not now be held
and treated as a creditor of the company, to the amount
that he represented to the president of the bank he
was to advance to the company to increase its capital
stock.    That the withdrawal from the assets of the
company by Stephenson in taking the company's notes
for the sum which under his contract with Parker he
had agreed to and did advance and of which he had
informed the bank, was a fraud upon the right of the
bank that can be determined in this character of pro-
ceeding.

The statute under which the bank is proceeding
reads:    "When the same property is attached in sev-
eral actions by different plaintiffs, against the same
defendant, the court may settle and determine all con-
troversies which may arise between any of the plaintiffs
*in relation to the property*, and the priority, validity,
good faith, force and effect of the different attachments,
and may dissolve any attachment partially or wholly, or
postpone it to another, or make such order in the prem-
ises as right and justice may require."    R. S. 1889,
sec. 570.    Manifestly this section of the statute con-
templates only that the court in this summary proceed-
ing shall determine such controversies as may arise
between the different attachment plaintiffs in relation
to the property attached and levied upon.

The trial court, adopting the view now contended
for by the bank, made an order postponing the lien of
Stephenson's judgment to the amount of $4,000 to that
of the bank, and ordered the funds in the hands of the
sheriff distributed accordingly.    To maintain that order
upon the facts of this cause, we must assume from the
section above set out that the trial court had the power
to determine, not only all controversies between the
different attachment plaintiffs that might have arisen
in regard to the property attached, but all controver-

sies that might arise between different conflicting attachment creditors growing out of the manner of the creation of the debt on which the attachments are based, or that all controversies between the conflicting attachment creditors might be adjusted by the court and an order made distributing the attached funds as right and justice might require according to the view of the judge before whom the cases might be pending.

The broad language of the section empowering the court to dissolve in this character of a proceeding "any attachment, partially or wholly, or postpone it to another, or make such order in the premises as right and justice may require," must be read and interpreted in the light of the preceding part of the sentence which clearly qualifies and limits that exercise of power by the court to the determination of controversies touching the priority, validity, good faith and effect of the different attachments as they relate to the property attached.

Clearly it was never contemplated in the adoption of that section of the statute that the court, in this summary proceeding, by motion, without the aid of a jury, should adjust and determine all controversies and differences that may have arisen between all the different attachment plaintiffs that may happen to levy upon the same property of a common debtor, and upon that adjustment and determination make an order postponing the lien of one's levy to that of another, without regard to the question as to the priority in point of time, validity, and good faith of the different attachments.

If all the rights and equities of the different attachment plaintiffs among themselves are to be adjusted and determined in this summary procedure, and the court is authorized thereon to make its order postponing the lien of one creditor under his prior attachment

to that of another subsequent in time of levy, and out of the proceeds resulting from the sale and disposition of the attached property, settle and pay off the judgments as right or justice may require, the words of the section, "the court may settle and determine all controversies which may arise between any of the plaintiffs in relation to the property and the priority, validity, good faith, force and effect of the different attachments," have no meaning or special significance whatever. If the controversy to be determined is not confined and limited to the questions alone of the priority, validity, good faith, force and effect of the different attachments as they relate to the property attached, still, the words above quoted would be of no service in the section.

Nothing short of the most positive and unambiguous language could induce the court to conclude that the legislature ever intended to introduce a practice so utterly at variance with all the rules of procedure under the attachment act as would result if section 570 receives the construction contended for by the respondents. If such a section as thus construed should find its way into our attachment act, all the essential characteristic features thereof would become nullified. If the priority of a first attachment lien can be assailed and postponed to the lien of a subsequent attachment creditor by the method here adopted, upon the mere grounds of equities or rights in favor of the subsequent attaching creditor against the first, upon some contract, agreement or understanding had between themselves, not growing out of the attachment proceeding, then the cardinal idea of award to the diligent, so manifest in our attachment act, would be stricken out, and the right of priority in fact would become, not a question of time, as generally understood, so much as a question

of preponderating equities of plaintiffs among themselves.

Here no question is made as to the priority in time of the Stephenson levy, or to the efficiency and regularity of his attachment proceedings. Here no proof is made that the stationery company did not owe Stephenson the full sum sued for and afterward reduced to judgment. Here it was not shown that Stephenson attempted or intended to withdraw from the assets of the stationery company or from the money in the hands of the sheriff resulting from the sale thereof, more than was sufficient to satisfy his claims; but it is contended by the bank that because Stephenson told its president that he was to become a stockholder of the company and to put $4,500 of money into its capital stock, that it would now be a fraud upon the bank to suffer him to enforce his claims to that amount against the assets of the company in advance of the bank, and that the court upon this motion can make such orders in the premises as right and justice, between the plaintiffs, may require, postponing the lien of Stephenson's attachment to that of the bank, to the amount that the bank had been damaged by Stephenson's failure to carry out his representation made prior to March 10, 1894, in the presence of its president. In other words, the court is asked to distribute the funds in the hands of the sheriff resulting from the sale of the attached property, in disregard of the priority of the levy of the attachments as provided by statutes, but in accordance with its determination of certain right and equities found to exist in favor of the bank against the first attaching plaintiff growing out of a conversation (or contract, if such it can be called) had between the president of the bank and the plaintiff Stephenson about a matter in nowise relating to the attached property.

Section 570 of the statute in contemplation was never intended to confer such enlarged and unwarranted power upon the circuit courts by this summary proceeding. In fact, the section was but a legislative declaration of authority in the court, which from the necessity of the situation of the parties and the peculiar nature of the case, it had always before possessed and exercised.

The common property being in the custody of the law through the seizing of the sheriff (the officer of the court), the question of its proper disposition and distribution by the court followed as a legal necessity, and that in turn would necessitate the inquiry as to who first levied; was the proceedings in each case regular; has anyone levied and thereby created a lien upon the property to a greater amount than he was entitled to; did the grounds for the attachment exist in favor of all who have levied attachments, and such like kindred inquiries that might address themselves to the solution and determination of the question as to how the funds should be properly distributed, but no attempt was made to give to the court the extraordinary and enlarged power of compelling a litigant who voluntarily came into court for one definite purpose of having adjudged and settled his or her differences with a defendant named in the account sued upon to have determined by the court alone, without the intervention of a jury, all controversies that might be found to exist between him or her and all others who might happen to hold a claim against the same debtor.

If the power of the court was not restricted by the express language of the section to the determination of such controversies as may arise between the different attachment plaintiffs "in relation to the property attached and the priority and validity and good faith of their different levies," but was given the full

scope contended for by respondent, then the provision of the section might be met by the constitutional objection that it operated to deny to the plaintiff Stephenson the right to have the differences between the bank and himself as to the question of the bank's alleged damages growing out of the conversation had by him with its president, determined by a jury.

The levy of Stephenson's attachment being first in order of time, regular in form, and to secure a valid indebtedness, should be first satisfied out of the proceeds of the attached property in the hands of the sheriff. The matter of the alleged damages occasioned to the bank by reason of the representations made by Stephenson to its president must be determined in an independent proceeding instituted for that purpose when the issues of facts may be passed upon by a jury if desired, but can not be in this summary proceeding by motion. The judgment of the trial court is reversed. All concur. BARCLAY, C. J., specially. BARCLAY, C. J., concurs in the judgment for the reason that the seventh, eighth and ninth grounds assigned in the motion of the Third National Bank are not sustained by the evidence, and that the other grounds of said motion are not available to postpone the attachment of Stephenson to that of the bank in the mode by which that object is sought in this case.