FRANK R. EDWARDS, Appellant, v. W. R. WATSON, Administrator of Estate of J. F. KILLINGSWORTH, and FARMERS BANK OF ASH GROVE,

### Division One, June 2, 1914.

1 **APPEAL: Death of Party: Revivor.** On the death of one of a number of appellants during the pendency of an appeal, a cause may proceed in the appellate court without a revivor, if the interests of the decedent and surviving appellants are not adverse; but, if adverse, it can proceed as to decedent's heirs or legal representative only by substitution in the manner prescribed by statute, namely, upon their voluntary appearance and consent or after service upon them of a summons issued for the purpose of revivor on or before the third term of court after the suggestion of the death of such deceased person by the appellant or other adverse party.

2. ———: ———: ———: **Administrator or Heirs.** A suit for the specific performance of a contract for the purchase of land involves title to real estate, and if the owner dies pending an appeal the suit should be revived in the name of his heirs, and that can be done by *scire facias* issued before the third term after a suggestion by appellant or other adverse party of such owner's death.

3. **CONTRACT: Evidenced by Different Papers: Definiteness.** Where several papers pertaining to the same transaction are simultaneously executed, all must be considered and the real contract ascertained from all. For instance, if the transaction pertained to the purchase of land, and what is denominated a "contract" does not describe the land, but simultaneously with its execution the parties executed a deed and the purchaser drew his check in part payment and the three papers were placed in an envelope and deposited in escrow with a bank, the three must be considered together, and if from all may be

gathered a definite and certain contract, specific performance will not be withheld on the ground of indefiniteness and vagueness.

4. **PRACTICE: Equity: Demurrer to Evidence.** At common law a demurrer to the evidence in an equity case was unknown. In Missouri the practice is to treat such a demurrer as a submission by defendant of the equities of the whole case upon the proof made by plaintiff. If the plaintiff's proof fails his bill is dismissed, but if his proof is sufficient he is entitled to a decree granting the relief sought and justified by the evidence.

5. **SPECIFIC PERFORMANCE: Perfect Title: Tender of Payment.** Where by the contract the owner agreed "to prepare and perfect title" and the purchaser was "to have a reasonable length of time to perfect loan," it was the duty of the owner to perfect the title; and if the evidence shows there was a break in the owner's paper title and that the purchaser was unable because of that defect to get a loan, and that when pressed to perfect the title the owner said the title was good enough for him, a defense that the purchaser failed to make tender of payment before bringing suit for specific performance and that he was financially unable to pay, will not avail, since the contract clearly contemplated that the purchaser would borrow the purchase money and the evidence shows he had within a reasonable time arranged to borrow the money and the lender was ready to make the loan, but refused to make it when he discovered the patent defect in the title. The fact that the evidence tends to show title in the owner by adverse possession does not excuse him from perfecting the title.

6. ————: ————: ————: **Inadequate Price.** In the absence of proof of inadequate price, fraud or overreaching, the fact that the owner thought the price at which he agreed to sell was lower than it ought to have been, is immaterial in a suit by the purchaser for specific performance.

7. ————: **When Decreed: Discretion.** If no earmarks of unfairness, overreaching or overkeenness appear either in the contract of purchase or the transaction, but both seem fair and just, specific performance will be decreed.

8. ————: **Interest and Rents: No Tender.** If no tender of payment is made except in the bill and at the trial, and specific performance is decreed, the purchaser should be charged with interest from the date mentioned in the contract as the time from which he should begin to pay interest, and the vendor should be charged with the reasonable value of the rents and profits from that date.

Appeal from Greene Circuit Court.—*Hon. J. T. White*, Special Judge.

REVERSED AND REMANDED (*with directions*).

*Hamlin & Seawell* for appellant.

(1) The agreement signed by the parties on July 7, 1908, and the deed and check executed on same day, all should be considered together, and when that is done they constitute a valid contract between the parties and fully comply with the statute in regard to the sale of real estate. Y. M. C. A. of Kansas City v. Dubach, 82 Mo. 475; Peycke Bros. v. Ahrens, 98 Mo. App. 456; 20 Cyc. 263; Ryan v. United States, 136 U. S. 447. (2) The papers heretofore referred to contained a sufficient description of the property to take the case out of the Statute of Frauds, and especially to admit oral evidence as to same. Black & Snyder v. Crowther, 74 Mo. App. 480; Smith v. Wilson, 160 Mo. 657; Printing Co. v. Belcher, 127 Mo. App. 133. (3) The description of the real estate as set out in the deed executed by Defendant Killingsworth is not correct, but the same may be corrected in this proceeding, and parol evidence is admissible to show the correct description. Smith v. Wilson, 160 Mo. 657; Abbott v. Dunivin, 34 Mo. 148. (4) This is the proper proceeding. Luckett v. Williamson, 31 Mo. 54; McClurg v. Phillips & Paul, 49 Mo. 315; Harman v. Blackstone, 61 Mo. App. 254; Martin v. Nixon, 92 Mo. 26; 26 Am. & Eng. Ency. Law, 16. The contract in this case is clear, definite and certain and should be enforced. Coal Co. v. Long, 231 Mo. 605.

*Patterson & Patterson* for respondents.

(1) The first insuperable barrier to plaintiff's recovery was his inability to perform his part of the contract, that is, pay the purchase price, either at the

time of bringing the suit or during the life of the con-
tract, or any other time. 3 Pomeroy's Eq. Jur. (2 Ed.),
secs. 1407, 1408; Clay v. Mayer, 183 Mo. 159; Craig v.
Van Bebber, 100 Mo. 589; Baker v. Clay, 101 Mo. 553;
Hollman v. Conlin, 143 Mo. 369; Langon v. Chesney,
186 Mo. 540; Gloeckner v. Kittlaus, 192 Mo. 477;
Rosenberger v. Jones, 118 Mo. 559; Secret Service Co.
v. Electric Mfg. Co., 125 Mo. 140. (2) The plaintiff
cannot recover because the contract sued on is ob-
viously so vague, uncertain and indefinite in its terms
that its full meaning cannot be determined from its
language. 3 Pomeroy's Eq. Jur. (2 Ed.), sec. 1405, p.
2162; Mastin v. Halley, 61 Mo. 196; Taylor v. Williams,
45 Mo. 80; Underwood v. Underwood, 48 Mo. 527;
Cherbonnier v. Cherbonnier, 108 Mo. 252; Butler v.
Murphy, 106 Mo. App. 28; Wallace & Eaves v. Figone,
107 Mo. App. 362; Wendover v. Baker, 121 Mo. 290;
Cable v. Jones, 179 Mo. 606; Rosenwald v. Middlebrook,
188 Mo. 58; Coal Co. v. Long, 231 Mo. 611. (3) The
plaintiff cannot recover because of his effort to conceal
from the defendant the evidence of obligation deposited
with the Farmers' Bank of Ash Grove, Missouri. 3
Pomeroy's Eq. Jur. (2 Ed.), secs. 1405, 1465; Duretts
v. Hook, 8 Mo. 374; McElroy v. Maxwell, 101 Mo. 294.
The contract that is at the basis of this suit was placed
in the custody of the bank at Ash Grove with the
written instruction that the envelope containing it
should not be opened unless both parties were present
requesting it. The plaintiff had the title examined
and discovered that there was a record defect bearing
date of about the year 1840. It was then that the
provision of the contract, to-wit, "that the aforesaid
Killingsworth agrees to prepare and perfect title," first
assumed form and meaning to plaintiff's mind. It was
then that he had his first intimation that this provision
imposed the obligation on Killingsworth to bring suit
for the record title. It was then that he noised this
duty of Killingsworth about, that it might come to his

ears. And instead of freely and willingly permitting Killingsworth to take a copy of the contract or see the contract at the bank in literal compliance with the bank's instructions, he prevented Killingsworth from having either copy or inspection prior to the institution of this suit. Such conduct proved a disposition on the part of the plaintiff to take an unfair and undue advantage of the defendant, and brings plaintiff's suit within the purview of the doctrine that "he who seeks equity must come into court with clean hands."

## ON QUESTION OF REVIVOR.

BROWN, C.—This suit was instituted October 26, 1909, against Killingsworth and the Farmers Bank, to obtain specific performance of a contract to convey land in Greene county and incidentally to reform the written contract by correcting the description of the land Among other things the petition states

"That on said date to-wit, July 7, 1908, the plaintiff purchased said real estate from the defendant for the price and sum of $3850, and entered into a written contract with defendant whereby they agreed as follows: that the plaintiff would pay for an abstract of title, and the defendant would furnish plaintiff a perfect title to said real estate, and deliver him possession of same between the first and 15th days of August, 1908, and allow plaintiff one-third of all crops grown on sixty-four acres of said premises in the year 1908 (except the orchard) and that plaintiff should have reasonable time to procure an abstract and a loan on said real estate, and the defendant was to have a reasonable time to perfect his title if it should be defective, and on said day executed a general warranty deed to plaintiff, intending by said deed to convey the aforesaid described real estate, and plaintiff drew his check on the Bank of Ash Grove, for the sum of one hundred dollars, payable to the said Farmers Bank, and plaintiff and defendant

J. F. Killingsworth delivered the possession of said written contract, check and deed, to the Farmers Bank aforesaid, which were enclosed in an envelope and deposited with the said bank, with the understanding and agreement on the part of the plaintiff and defendants that the said defendant, Farmers Bank, would hold said papers until called for by both parties, to-wit, the plaintiff and J. F. Killingsworth, and would deliver up said papers when requested so to do by said parties."

It also charges, in substance, an offer to pay the consideration, and his readiness still to do so, and brings the amount into court. It also specifies certain damages which plaintiff claims to have suffered from the non-performance of the contract, and conclucdes as follows:

"Wherefore plaintiff prays the court to ascertain the amount necessary to perfect said title in accordance with said contract, and the value of the crop belonging to plaintiff on said premises, and the rent value of the same from the 12th day of August, 1908, and the damages accruing to plaintiff by reason of being deprived of said premises. And that the possession of said premises be delivered to plaintiff, and all right, title and interest of defendant therein be decreed and vested in plaintiff upon the payment of the sum found due the defendant by him, and in the event the court should find that plaintiff is not entitled to a specific enforcement of said contract, then plaintiff prays for the sum of $1500 as damages by reason of its breach and for other proper relief."

A trial was had before the court without the intervention of a jury on October 27, 1909, resulting in a judgment for defendants dismissing the petition. The case was treated throughout as one for equitable relief. This appeal was returnable to the April term, 1910, of this court. Killingsworth died in February, 1910, and on the 5th day of the following month the defendant Watson became administrator of his estate.

On January 11, 1912, and during the October term, 1911, the death of Killingsworth was suggested in this court and a *scire facias* was issued to the administrator returnable on the first day of the next term. On March 12, 1913, the abstract of record and brief were filed by appellant, and on April 12th the respondents by their attorneys filed their brief.

The heirs of Killingsworth have, during the present term, appeared for that purpose only, and filed their motion to dismiss the cause for the reason that it has not been revived by substituting them as defendants, and the question is presented whether we should proceed with the parties now before us to finally dispose of this appeal.

It has been uniformly held by this court that, although new parties, as successors to those who may have died during the pendency of the appeal, can only be substituted in the mode pointed out by the statute, that is to say, upon voluntary appearance and consent of the adverse party, or after service of summons issued for the purpose of revivor on such party (Jeffries v. Flint, 55 Mo. 29), yet on the death of one of a number of *appellants* a cause may proceed without a revivor. [Reineman v. Larkin, 222 Mo. 156; Reed v. Colp, 213 Mo. 1. c. 581; St. Louis v. Brinckwirth, 204 Mo. 1. c. 286; Prior v. Kiso, 96 Mo. 303.] These cases, however, apply each to its own facts, and there is nothing in them that suggests that the court thought it impossible that circumstances might arise in which the interests of the parties ranged on the same side as appellants might in fact be so adverse that they would need protection from each other. The Legislature seemed to have some such notion when it expressly required, in what is now section 2074, Revised Statutes 1909, that the survivors on either side should suggest the death of any of their own associates which might occur up to the very time of the submission  This

*Death of Party: Revivor.*

notifies the opposite party that one of its adversaries has gone where the court has no jurisdiction over him, and that they have an opportunity to determine whether, to affect his interest or claim, some one else must be brought in to represent it.   If so, the provisions of section 2075 authorize it to be done *nolens volens*. Under the provisions of section 2078 it might be done "in like *time* and manner and with like effect as provided for in original suits in circuit courts."   This provision with respect to *time* can only refer, and therefore does refer, to the limitation contained in section 1921 of the statutes to which we have already referred, which is as follows: "In all cases where the representatives of ·a deceased or disabled party shall not be made parties according to the provisions of this article, on or before the third term after the suggestion of the death or disability, the action shall abate as to such party and the interest of his representative or successor therein; and the cause shall proceed in favor of or against the survivors."   Those two sections (1921 and 2078) read together, as they must be, give to the representatives interested, as well as to the parties to the suit, the plenary right to make the substitution authorized at any time before or during the third term after the suggestion of the death.   We cannot if we would, without violation of the statute, curtail this right with respect to any one having an interest in its exercise.

This petition is framed upon the theory that the suit is one in equity for the specific performance of a contract for the sale and conveyance of land.   It is to that feature that this court owes its jurisdiction of the appeal.   The heirs or devisees of the deceased defendant, whoever they may be, are the legal owners of the land, and therefore the parties interested adversely to the plaintiff in that controversy.   It is true that the petition contains a prayer for damages for breach of the contract, provided the court should find itself unable

to decree its specific performance, and the administrator has been substituted as a party defendant on some such ground, but this gives him no common interest with the owners, and therefore no right to represent them in their defense. The bank is a mere stakeholder having no interest whatever in the merits of the controversy. The judgment has inured to the owners of the land. It is the right of appellant to attach it in this appeal, but the burden is upon him to overthrow it, and he can only sustain that burden by proceeding in the manner prescribed by law. The cause will stand upon the docket during the present term for such action as may be taken in compliance with the law.

*Blair, C.*, concurs.

PER CURIAM:—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All concur.

## ON THE MERITS.

GRAVES, J.—This is the second opinion for this case. The suit was originally one of Frank R. Edwards v. J. F. Killingsworth and Farmers Bank of Ash Grove. After the appeal Killingsworth died, and his administrator, W. R. Watson, was made a party, and the cause revived in his name. At the April term, 1913, of this court, the heirs of Killingsworth, entering their appearance specially, sought to have the cause dismissed because three terms of court had passed after the suggestion of the death of Killingsworth. With this question our commissioner BROWN dealt in his opinion —*Vide ante*, p. 635. The result of that opinion was a *scire facias* for the heirs of Killingsworth, and they have now been brought into court by proper service. The case is, therefore, here now upon its merits, with all interested parties before the court. In the previous opinion our commissioner thus outlines the case and the petition:

"This suit was instituted October 26, 1909, against Killingsworth and the Farmers Bank, to obtain specific performance of a contract to convey land in Greene county and incidentally to reform the written contract by correcting the description of the land.

"Among other things the petition states:

"'That on said date, to-wit, July 7, 1908, the plaintiff purchased said real estate from the defendant for the price and sum of $3850, and entering into a written contract with defendant whereby they agreed as follows; that the plaintiff would pay for an abstract of title, and the defendant would furnish plaintiff a perfect title to said real estate, and deliver him possession of same between the first and fifteenth days of August, 1908, and allow plaintiff one-third of all crops grown on sixty-four acres of said premises in the year 1908 (except the orchard) and that plaintiff should have reasonable time to procure an abstract and a loan on said real estate, and the defendant was to have a reasonable time to perfect his title if it should be defective, and on said day execute a general warranty deed to plaintiff, intending by said deed to convey the aforesaid described real estate, and plaintiff drew his check on the Bank of Ash Grove, for the sum of one hundred dollars, payable to the said Farmers Bank, and plaintiff and defendant J. F. Killingsworth delivered the possession of said written contract, check and deed, to the Farmers Bank aforesaid, which were enclosed in an envelope and deposited with the said bank with the understanding and agreement on the part of the plaintiff and defendants that the said defendant, Farmers Bank, would hold said papers until called for by both parties, to-wit, the plaintiff and J. F. Killingsworth, and would deliver up said papers when requested so to do by said parties.'

"It also charges, in substance, an offer to pay the consideration, and his readiness still to do so, and brings the amount into court. It also specifies certain damages

which plaintiff claims to have suffered from the non-performance of the contract. and concludes as follows:

"'Wherefore plaintiff prays the court to ascertain the amount necessary to perfect said title in accordance with said contract, and the value of the crop belonging to plaintiff on said premises, and the rent value of the same from the 12th day of August, 1908, and the damages accruing to plaintiff by reason of being deprived of said premises. And that the possession of said premises be delivered to plaintiff, and all right, title and interest of defendant therein be decreed and vested in plaintiff upon the payment of the sum found due the defendant by him, and in the event the court should find that plaintiff is not entitled to a specific enforcement of said contract, then plaintiff prays for the sum of $1500 as damages by reason of its breach and for other proper relief.'

"A trial was had before the court without the intervention of a jury on October 27, 1909, resulting in a judgment for defendant dismissing the petition."

It should be noted that the printed abstract of the record shows neither an answer nor a reply, although the case proceeded as if both had been properly lodged below. The trial court heard the plaintiff's evidence and upon a demurrer being · interposed thereto by defendant, the same was sustained and plaintiff's bill dismissed, with judgment for defendant for costs. From such judgment this appeal was taken.

Under the evidence the plaintiff and J. F. Killingsworth entered into the following contract:

CONTRACT.

This Agreement made and entered into by and between J. F. Killingsworth, party of the first part, and F. R. Edwards, party of the second part, both of Green county, Missouri.

Witnesseth: That the aforesaid Killingsworth agrees to prepare and perfect title, but the aforesaid F. R. Edwards is to pay for the making of abstract containing complete title, and the said Edwards, is to have a reasonable length of time to

258 Mo.—41

perfect loan and abstract, and the aforesaid Edwards, is to pay interest at the rate of six per cent per annum from the 1st to the 15th day of August, 1908, at which time Edwards is to have possession and the said Killingsworth is to pay all back taxes, if there be any unpaid; and Edwards is to pay taxes from 1908, crop of sixty-four acres and Edwards one-third of same except orchard.  Said deed to land is to be placed in escrow in Farmers Bank of Ash Grove, and held by said bank until the loan is provided and title finally finished.

Dated this 7th day of July, 1908.

J. F. KILLINGSWORTH,
FRANK R. EDWARDS.

This contract, together with a deed, which with one slight misdescription, described the property, was placed by the parties in the Farmers Bank of Ash Grove.  There was also deposited with them a check for $100 signed by Edwards and made payable to the said Farmers Bank and drawn on the Bank of Ash Grove.  When the three instruments were deposited, they were sealed, by direction of the parties, in an envelope and the bank officially notified to thus keep them and not exhibit them unless both parties were present.  Plaintiff's proof tends to show that he was unable to secure a loan on the land because of a patent defect in the paper title.  He introduced evidence to the effect that he had arranged to get $2500 from a Springfield loan agent, and the agent had the money ready on August 21, but refused to furnish the loan, because of the defect in the paper title.  The evidence conclusively shows a fatal break in Killingsworth's paper title, but it likewise tends to show title by adverse possession.  It also shows, *aliunde* the contract, that Killingsworth understood that plaintiff was relying upon a loan on the premises for at least a part of the purchase price.  At the close of the testimony we find this offer of record:

"Plaintiff offers now to pay into court the full purchase price for the lands in controversy, together with six and one-half per cent interest from the date of the alleged contract to the present time, and asks the

Edwards v. Watson.

court to decree to him all the right, title and interest which the defendant now has in the lands in contro- versy.''

I. The evidence does not show that the plaintiff at any time prior to trial tendered the actual cash and demanded delivery of the deed, but Edwards does testify that he had all arrangements for the money, if defendant had made the perfect paper title. Some of his evidence perhaps goes further than this, but with the view we have of the case, that portion may be passed, at least for the present.

**Contract: Found in Different Papers.**

One contention of the respondent is that this contract is too indefinite and uncertain to be enforced in equity. This question is one of the basic matters in the controversy. Standing alone the contract paper, or rather the paper called the "contract" is rather vague and indefinite, but is this paper alone to be considered under the facts of this case? We think not. It stands undisputed that three documents, i. e. the contract, the deed and the check were executed at one and the same time, and pertained to one and the same matter. Not only so, but they were sealed up and deposited together as representing the doings of the parties, and placed in escrow. Under well-established rules we must look to all of the simultaneously executed instruments for the real contract, and if from them all can be gathered a definite and certain contract, i. e. one enforceable in equity, then it is sufficient in form. [Y. M. C. A. of Kansas City v. Dubach, 82 Mo. l. c. 484; 20 Cyc. 263.] As to what the contract should show and how it may be shown the Court of Appeals in Peycke Bros. v. Ahrens, 98 Mo. App. l. c. 458 and 460, says:

"It is an old practice to put in evidence several papers, as letters, etc., relating to the same contract and by their references to or connections with each

other, to establish all the requisites of a proper memorandum under the statute. Brown, Stat. Frauds, 346b et seq.; Heideman v. Wolfstein, 12 Mo. App. 366; Greeley-Burnham Grocer Co. v. Capen, 23 Mo. App. 301; Cunningham v. Williams, 43 Mo. App. 629; Armsby Co. v. Eckerly, 42 Mo. App. 299; Moore v. Mountcastle, 61 Mo. 424.] . . . In making a contract involving the Statute of Frauds there are three essential and inevitably necessary ingredients: (1) the parties; (2) the subject-matter; and (3) the price. Where any one of these essentials is wanting, there is no contract. [Kelly v. Thuey, 143 Mo. 422; Martin v. Mill Co., 49 Mo. App. l. c. 29.] The dominating question here is, whether or not, if we take the several writings and construe them together as an entirety, they disclose a contract of sale sufficient to satisfy the requirements of the Statute of Frauds?"

When the three simultaneously executed instruments involved in this case are read, we have no trouble in getting the facts. They show that Killingsworth had sold to Edwards certain described lands for a stipulated price. In other words, they show (1) the parties, (2) the subject-matter of the sale, and (3) the price. Not only so, but they further show that Killingsworth was to "prepare and perfect title," but Edwards was to pay for the abstract which should show "complete title." It does not show that Edwards was to pay for perfecting the title, but on the contrary "Killingsworth agrees to prepare and perfect title," clearly expressing the idea that the parties recognized that something might have to be done in order that the abstract (which was to be paid for and was paid for by Edwards) might show a "complete title." Taking the instruments together it is clear that Edwards was to have a reasonable time in which to "perfect loan and abstract" and that this would be after Killingsworth had prepared and perfected the title. Further along the same line in the paper called the "contract," it is

said: "Said deed to land is to be placed in escrow in. Farmers Bank of Ash Grove, and held by said bank until the loan *is provided and title finally finished.*" All this goes to show that it was contemplated that something was to be done to the title, and the first paragraph of the paper shows that Killingsworth was to do this perfecting of title. Not only so, but the fair construction of the contract would be that such should be done prior to the perfecting of the loan. We cannot say that the contract is too indefinite and vague to be enforced. Was the chancellor *nisi* justified in not enforcing it? This question we take next.

II. Much is said in respondents' brief about the plaintiff's failure to tender the cash and his financial ability to pay. Unfortunately for respondents they

Tender.

rest their cause in equity upon the plaintiff's evidence. At common law a demurrer to the evidence in equity cases was unknown, and in our practice we have treated such action by the defendant as submitting the equities of the whole case upon the proof made by the plaintiff. Of course if the plaintiff's proof fails, his bill must be dismissed, but if his proof is sufficient he is entitled to a decree granting the relief sought and justified by the evidence. That the defendant refused to "perfect the title" as by the contract he was required to do is apparent. When pressed he said the title was good enough for him. That it was his duty to make the first move upon this checker board is clear, because the missing link in the paper title is apparent. This contract cannot be tortured into one for other than a perfect paper title. The wording of it, by which Killingsworth was bound, shows that a perfect paper title was the one contemplated by the parties. Plaintiff could not move under the contract until Killingsworth first moved. The contract contemplated a loan to secure the purchase money, or a part of it, and this could not be made until Killingsworth perfected the

title. All this clearly appears in the evidence. Killings-worth was the party at fault from first to last. His reasons are immaterial. It may have been he thought, as suggested in the brief, that the price was lower than it should have been, but what he thought is immaterial, absent proof of inadequate price.

There is no question in the case of fraud or over-reaching. The parties were dickering about the trade for several weeks prior and dealt with each other at arms' length. Plaintiff offered in his bill and again offered at the trial to put up the consideration, and asked that the deed be ordered corrected in a slight particular as to two acres of the land. We can see no good reason for refusing to enforce this contract. Our brother LAMM has so elegantly expressed my views of when contracts should be enforced in equity that I leave the rule he announced to be reannounced in his own language. In Kirkpatrick v. Pease, 202 Mo. l. c. 493, he says:

"Finally, we are asked to sustain the judgment because specific performance is not a matter of absolute right, but rests in the discretion of the chancellor. In a sense specific performance does rest in the discretion of the chancellor. But discretion does not mean caprice. A discretion measured by a capriciously elastic yardstick would present a false measure of equitable right. This discretion is spoken of in the books as a sound discretion—sound, meaning judicial. The right doctrine is elegantly put by WAGNER, J., thus: 'A bill for the specific performance of a contract is not granted as a matter of right by the court to which it is addressed, but from a just and reasonable discretion. But this discretion is not to be exercised in an arbitrary or capricious manner, but is to be governed by sound legal rules and principles. If, upon a whole view of the facts and circumstances, the court shall be of the opinion that the contract is fair, just and equitable, it will use its extraordinary authority and

decree specific performance; but, if, on the contrary, it appears inequitable and unjust, the remedy will be denied and the party left to his action at law.' [Ivory v. Murphy, 36 Mo. l. c. 542.]

"Courts of justice sit to enforce the law. Now, the law may be said to be a general rule of action—a rule of civil conduct prescribed by the supreme power in a State. A contract is but a rule of action binding upon the parties thereto—i. e., a contract is but a law unto the parties thereto. Therefore, courts sit to enforce contracts—not to abrogate them. [Evans v. Evans, 196 Mo. l. c. 23; Kilpatrick v. Wiley, 197 Mo. l. c. 172.] If (for instance) the bargain in this instance was overkeen and unjust, or if the party against whom specific performance was sought was laboring under some disability and had been overreached, then (or in similar cases) there would be something for the discretion of the chancellor to take hold of—something binding his conscience. But, absent any earmarks of unfairness, overreaching or overkeenness (as here) and present a fair, just real estate contract (as here), to deny specific performance is to wound and vex the soul of equity itself."

There are no earmarks of unfairness, overreaching or overkeenness in this contract or in this transaction. So far as the record speaks this is a just and fair real estate contract. On the record the court nisi should have decreed title in plaintiff upon the payment of the purchase price and interest, and should have charged the defendant with rents and profits. The judgment will, therefore, be reversed and the cause remanded with directions to the trial court to enter a decree vesting the title to the land by its proper description in the plaintiff upon his payment into court, within a reasonable time to be fixed by the court, of the purchase price stated in the contract, with interest thereon from August 15, 1908, at six per cent less such sum as the court may find upon a hearing upon that one issue to

be the reasonable rents and profits of such land from that date to the time of the trial on the one question of rents and profits.

Judgment reversed and cause remanded with the directions aforesaid.    All concur.