Claude COOPER, Respondent,

v.

John MAYER and Cora Mayer, Appellants.

No. 46414.

Supreme Court of Missouri,

Division Nò. 1.

April 14, 1958.

Wm. C. Scott, West Plains, for appellants.

Esco V. Kell, West Plains, for respondent.

HOLLINGSWORTH, Presiding Judge.

Defendants, Jack Mayer and Cora Mayer, husband and wife, have appealed from a decree of the trial court ordering specific performance of their written contract granting plaintiff, Claude Cooper, an option to purchase ten acres of land owned by defendant Cora Mayer in Howell County, Missouri.

On the 19th day of March, 1951, defendants, as lessors, and plaintiff, as lessee, entered into a written agreement wherein defendants, for the consideration therein named, (a) leased to plaintiff the ten-acre tract in controversy for a term of five years ending March 19, 1956, and (b) granted plaintiff an option to purchase said premises "at any time before the expiration of this lease on the payment of the sum of $1000.-00."

The court found that plaintiff had duly exercised his option to purchase the land in accord with the terms of the agreement and that defendants had refused to convey. The

modified decree, entered on March 22, 1957, was that plaintiff deposit in court within ten days the sum of $1,000 with interest at 6% from March 17, 1957; that defendants thereupon execute proper deed of conveyance to plaintiff; and that, failing so to do, all of defendants' title in the land vest in plaintiff. Plaintiff, on March 30, 1957, deposited with the clerk of the court the sum of money required in the decree.

Defendants contend that plaintiff did not exercise the option granted and did not pay or tender the purchase price to the defendant owner, Cora Mayer, within the time fixed by the contract; and that a timely tender of the purchase price to the defendant Jack Mayer was ineffective for want of proof of the latter's agency to accept payment in behalf of Cora Mayer. Plaintiff contends that he duly notified defendants of his election to exercise said option and thereafter made due and timely tender of the purchase price to defendant Jack Mayer, whom Cora Mayer, by the contract and by conduct, words and acts, had held out as her agent; and that, in any event, defendants had repudiated their agreement to convey, thereby waiving tender.

Title to the land came to Cora Mayer by inheritance. It fronts on Highway 60 near the City of Mountain View. Raymond Smith acted as agent for plaintiff in procuring the lease and option above described. Thereafter, plaintiff and Smith operated a lumber mill upon the premises.

Plaintiff's evidence was that in February before the lease was to expire on March 19, 1956, Raymond Smith and his wife went to the home of defendants at the edge of Mountain View, where Smith talked to both defendants. Smith asked Jack Mayer if he would renew the lease. Jack said he "wanted more money". Smith replied that "you are going to force Mr. Cooper (plaintiff) to buy this land because he isn't going to pay that when he has an option for $1000.00." Jack said, "Let's tear up the lease." Cora Mayer said, "Dad (Jack), why don't you lease it for at least a year?" Jack then said, "I will see you."

On March 1, 1956, plaintiff mailed to defendants at Mountain View, Missouri, a letter stating:

"The present lease expires before too long and I would like to have you advise me if you want to extend the lease another five (5) years or if it will be necessary for me to exercise my 'option to purchase' the tract of land?

"I would want the lease renewed under the same conditions as the lease I now have.

"I will appreciate hearing from you at your earliest convenience. Thanking you for your cooperation, * *."

Following receipt of that letter, Jack Mayer brought it to the mill and said to Raymond Smith, "I don't want to deal with him (plaintiff) but I will lease it to you." Smith again told him that "you are going to force Mr. Cooper to buy the land."

On March 7, 1956, defendant Jack Mayer signed and mailed to plaintiff and plaintiff received a letter reading:

"Your letter of March 1st received but was missent but received yesterday. Showed it to Raymond Smith and said to write you as to the place. We will not sell at present but would rent it to you folks but would not want any contract at all and rent on monthly basis. As your time is out 19th of this month, and would rent it for twenty-five dollars a month payable in each month in advance. This is best we could do, till we figure out what we want to do. Mr. Smith said whatever wanted to do would suit him."

Jack Mayer admitted on cross-examination that Cora Mayer told him to write that letter and she knew he did write it.

On March 10, 1956, Esco V. Kell, attorney for plaintiff, wrote and mailed to defendants the letter following:

"* * * Mr. Cooper has the option to purchase the 10 acre tract of land

which you and Mrs. Myers owns on or before the 19th day of March, 1956. I am authorized to notify you that Mr. Cooper has the $1000.00 ready to pay for the land unless you should desire to extend the lease on the same terms for another term of five years.

"Please bring your letter and copy of your lease to my office next Saturday, March 17, 1956, so that we can close the purchase option or extend the lease if you want to extend lease rather than sell.

"This is your notice that the option to purchase will be exercised and as the lease agreement provides unless we make other arrangements. * *"

On March 17, 1956, Raymond Smith and Jack Mayer met at the office of Mr. Kell. There, Mr. Smith, pursuant to priorly given direction of plaintiff, delivered to Mr. Kell $1,000 in currency, which Mr. Kell counted in the presence of and tendered to defendant Jack Mayer, with the statement that he was demanding a deed today, and arrangements were made for the parties to meet at Mr. Kell's office at 1:00 p. m., of that day. Kell and Smith waited at Mr. Kell's office until 4:00 p. m., but neither of the defendants appeared. Mr. Kell thereupon prepared a written demand and gave it to Pete Thompson, the city marshal, to deliver to Cora Mayer. Said demand was as follows:

"You and each of you are hereby notified that I hereby exercise my option to purchase the 10 acre tract of land described in certain lease signed and executed by you on the 19th day of March, 1951, in favor of Claude Cooper.

"You are hereby further notified that I hereby require that you on or before March 19, 1956, execute a proper deed of conveyance conveying to me, Claude Cooper, the said ten acres described in said lease. You are also hereby notified that the considera-

tion recited in said lease of $1000.00 for the purchase of said land is now on deposit in escrow with the Bank of Mountain View, Missouri, ready to be paid to you upon delivery of a warranty deed conveying to Claude Cooper the said described land, and that the escrow agent, Bank of Mountain View have here-to-fore been instructed to pay said sum of money to you as the purchase price of said land in accordance with the option given to Claude Cooper in said lease.

"/s/ Claude E. Cooper
By /s/ Raymond Smith
Agent for Claude Cooper"

Pete Thompson was unable to find either Jack Mayer or Cora Mayer until after March 19, 1956, although he made repeated trips to their home on each of the days of March 17, 18 and 19.

Defendant Cora Mayer testified that she never authorized her husband to "see after this land", nor to rent it, nor to accept the purchase price. She also denied receipt of any letter from plaintiff in which he said he was exercising his option. On cross-examination, she denied receipt or knowledge of any letter from plaintiff. She also testified:

"Q. Did you hear your husband and Raymond talking about the land? A. I did.

"Q. Did you tell Mr. Mayer that he ought to re-rent it? A. I said, 'he ought to do something about it, but I wouldn't sell it.'

*    *    *    *    *    *

"Q. You made that statement to your husband? A. I made it to Raymond too. I said, 'We may lease it but wouldn't sell it.'

*    *    *    *    *    *

"Q. You and your husband talked about your business matters, didn't you? A. Part time and it is my property, we—

"Q. You did talk to him about this? A. Yes, sir.

"Q. You told him to sell it? A. I said I wouldn't sell but maybe I would rent it."

Defendant Jack Mayer denied that his wife ever authorized him to sell or to accept payment for the land. He admitted that money was counted out and offered to him at Mr. Kell's office, but that he refused to take it, saying, "I can't sell somebody else's property"; and that Kell told him to go get his wife, and he went home and there found a note on the table that she had gone to Willow Springs.

Jack Mayer further testified:

"Q. Now, you talked to your wife about being down at the office and about the $1000.00? A. Yes, sir.

\*    \*    \*    \*    \*    \*

"Q. She told you she wouldn't sell the land? A. No, sir, she said, 'I ain't selling it, I don't have to sell it.' "

A qualified expert in land values in the vicinity of the tract in controversy testified in behalf of plaintiff that its present market value was from $35 to $40 per acre. There is no evidence to the contrary and no contention is here made that the price of $1,000 named in the option contract was inequitable or unconscionable either when the contract was made or when the decree was rendered.

■ The trial court made no specific finding of facts. We think, however, that one cannot read the record without concluding that plaintiff in good faith intended and was ready, able and willing to exercise the option in accord with the terms of the contract; that, prior to the expiration of the lease, both defendants had due notice of his intention to exercise the option granted him and of his demand that proper deed of conveyance be executed upon payment of $1,000; that both defendants, with such knowledge, unconditionally repudiated and refused to comply with their agreement to sell the land to plaintiff upon payment of the sum of $1,000 before the expiration of the lease and thereafter undertook to prevent plaintiff from making an effective tender of the purchase price.

■ The courts of Missouri unanimously announce the rule that "where failure of a party to perform a condition is induced by a manifestation to him by the other party that he will not substantially perform his own promise, performance of such condition is waived and, therefore, excused." See cases cited and approved in Rosenbloom v. New York Life Ins. Co., 8 Cir., 163 F.2d 1, 4 [4]. In the early case of Deichmann v. Deichmann, 49 Mo. 107, it was held, as is concisely summarized in the syllabus, that when the vendor of land claims to have rescinded, and repudiates and denies the obligation of the contract, placing himself in such a position that it appears that if tender were made its acceptance would be refused, then no tender need be made by the vendee. In such case it is enough if the latter, in a suit for specific performance, offer by his bill to bring in the money when the amount is liquidated.

The following cases have also approved and followed that rule: Edwards v. Watson, 258 Mo. 631, 645–646, 167 S.W. 1119, 1123 [6]; Starr v. Crenshaw, 279 Mo. 344, 213 S.W. 811, 814–815; Katz v. Dreyfoos, Mo.App., 26 S.W.2d 999, 1001; Frank A. Gilbert Realty Co. v. Timmerman, Mo., 183 S.W.2d 131, 133; Cummins v. Dixon, Mo., 265 S.W.2d 386, 397 [18], 47 A.L.R.2d 441. See also 58 C.J., Specific Performance, § 349, pp. 1085–1086; 81 C.J.S. Specific Performance § 103; 49 Am.Jur., Specific Performance, § 144, pp. 167–168.

The law as declared in those cases makes it unnecessary that we further explore the question of Jack Mayer's authority, real or apparent, to act in behalf of Cora Mayer. Under the clearly established facts, equity excused technical tender of the purchase

price as a condition precedent to plaintiff's right to specific performance.

The decree of the trial court was for the right party and should be and is affirmed.

All concur.