Robert M. BAKER,
Plaintiff-Respondent,

v.

McCUE–MOYLE DEVELOPMENT COM-
PANY, A General Missouri Partnership,
Defendant-Appellant,

v.

HARDIN STOCKTON CORPORATION
and Heritage 100 Real Estate, Inc.,
Intervenors-Respondents.

No. 46081.

Missouri Court of Appeals,
Eastern District,
Division Five.

Dec. 31, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 13, 1985.

Case Transferred to Supreme Court
April 2, 1985.

Case Retransferred to Court of
Appeals Sept. 12, 1985.

Original Opinion Reinstated
Sept. 20, 1985.

Bradford A. Brett, Mexico, for defendant-appellant.

Louis J. Leonatti, Mexico, for Robert M. Baker.

Lewis Eugene Melahn, Mexico, for Hardin Stockton Corp. & Heritage 100 Real Estate.

MICHAEL J. HART, Special Judge.

Defendant-appellant McCue-Moyle Development Company (seller) appeals a judgment for specific performance of a real estate sales contract in favor of plaintiff-respondent Robert M. Baker (buyer). The court rendered an accounting for income and expenses during the period from the date it found closing should have occurred, August 8, 1980, to the date of actual closing under the order of specific performance, April 30, 1982. Seller's real estate agent, Hardin Stockton Corporation and the buyer's agent, Heritage 100 Real Estate, Inc., intervened for their sales commission. The trial court awarded the commission to intervenors and rejected defendant's counterclaim alleging negligence in handling the transaction. Defendant seller's counterclaim against the buyer to retain the down payment was denied.

The true dispute resulting in this litigation was between the general partners of McCue-Moyle Development Company, R.A. Moyle, General Contractor, Inc., a Missouri corporation (Roy A. Moyle, Sr., President) and McCue and Company Realtors, Inc., a Missouri corporation (Kenneth W. McCue, President). In 1978 the partnership undertook to construct Eastwood Apartments. The project was financed by the Farmers Home Administration (FMHA). The construction was plagued by cost overruns. Mechanics liens in the amount of $183,000 were filed against the property. The partners agreed to sell the project but disagreed on the sale price and terms of sale.

On behalf of the partnership Roy A. Moyle signed an exclusive listing agreement with Hardin Stockton Corporation for the sale of the project at a price of $1,100,-000. McCue notified Moyle by letter that the listing agreement was acceptable. However McCue subsequently notified Hardin that he wanted $1,200,000 for the project. Thereafter the partners, Moyle and McCue, were not in harmony. Moyle remained a willing seller for the listing price and McCue an unwilling seller at that price.

Heritage 100 Real Estate, Inc. introduced defendant-respondent Robert M. Baker to the property and became his real estate agent. Baker conferred with FMHA about financing the purchase or assuming the existing loan on the project. His written offer in the amount of $1,100,000 was presented to Moyle and signed on behalf of the partnership on April 2, 1980. Hardin Stockton agreed to divide its listing contract commission with Heritage 100.

The terms of the sales contract provided that Baker would pay $4,000 down, assume three promissory notes of the partnership payable to FMHA, pay off existing mechanics liens, pay McCue-Moyle partnership $56,000 in cash and convey two residential properties to the partnership. The selling partnership was to provide the purchaser with $1,100,000 in title insurance, assign all leases with existing tenants and transfer tenant's deposits to the buyer. The two residential properties were to become the real estate commission to be divided between buyer and seller's agents.

The sale agreement provided that time was of the essence and set July 9, 1980 for closing. If title had not been perfected by that date but was perfected thereafter the sale was to be closed within five days after title had been perfected and approved by the buyer.

Seller's agent gave a copy of the sales contract signed by Moyle only to the buyer before McCue received a copy. The buyer filed a loan application with FMHA to assume the partnership's indebtedness and his application was approved by the local office subject to further approvals by state, district and national offices of FMHA. The buyer was notified orally on June 26, 1980 that these offices had authorized assumption of the loan and on September 11, 1982 he received written confirmation of acceptance.

At approximately the same time the buyer received the oral authorization of approval from FMHA, McCue directed his attorney to notify buyer's attorney that McCue had assumed the position that the sales contract was not binding on the partnership because McCue had not signed it, that the partnership was not bound by the listing agreement (the price had been changed), and that the seller's agent, Hardin, had not properly conducted itself toward McCue as a partner. McCue also informed FMHA of his position.

Moyle remained willing to close under the provisions of the sales contract. On July 25, 1980 the existing mechanics liens were paid in full, 95% of the funds were provided by FMHA and 5% by Moyle and wife.

During the last week of July 1980 it is clear that Moyle and Baker were proceeding toward a closing and that McCue was resisting a closing. Although paid, the me-

chanics liens remained of record and appeared as liens on an abstract of title delivered to the buyer's attorney on July 29, 1980.

On August 8, 1980 both Moyle and McCue appeared at the offices of the buyer's attorneys. The buyer was not personally present. Moyle produced a partnership Warranty Deed signed by Moyle only. McCue said that the deed had to be signed by both general partners and that he would consider signing the deed only if more money were offered. Moyle did not produce the mechanics lien releases, the $1,100,000 title insurance policy, the assignment of tenant's leases or the transfer of tenant's deposits. The tenants had not been notified to make rent payments to the buyer. The buyer testified at trial that had the deed been signed by both parties he was on that date ready, willing and able to perform his obligations under the sales contract. FMHA's written confirmation for the buyer's loan assumption was not yet available and was not received until September 11, 1982.

The buyer brought this suit for specific performance on November 5, 1980. He also asked for an accounting for the income and expenses after August 8, 1980. After a hearing the court entered a interlocutory judgment ordering specific performance of the contract. The court found that Moyle signed the sales contract without the knowledge or consent of McCue; that the buyer had no knowledge or reason to suspect that the partnership agreement provided that one partner could not bind the other without his consent; the sales contract was legally binding on the partnership when signed by Moyle; that the partnership made no legal tender on August 8, 1980 because the buyer did not have reasonable notice and opportunity to be present and that his refusal to accept the warranty deed was excused by McCue's failure to execute the deed. It also ordered an accounting of all income and expenses incurred in the operation of the apartment project from August 8, 1980 through April 30, 1982.

At a subsequent hearing on July 19, 1982 the court approved the following computation to arrive at the sum due the partnership as sellers upon the closing of the sale:

| | |
|---|---|
| Purchase price | $1,100,000.00 |
| Less: | |
| Assumption by Respondent Baker of three FMHA promissory notes | ( 966,031.18) |
| Real Estate conveyed for the sale contract | ( 56,000.00) |
| Assumption of Tenant Deposits | ( 4,800.00) |
| Increase in Cash from the Project from August 7, 1980 to June 16, 1982 | ( 10,591.48) |
| Payments to McCue and Company | ( 4,000.00) |
| Missouri Corporate Franchise Tax For McCue and Company Realtors, Inc. | ( 543.00) |
| Payments to Breet and Erdel | ( 8,562.24) |
| Payment of McCue and Company's Corporate Income Tax | ( 1,421.00) |
| Fee to Moore, Horton & Company | ( 343.50) |
| Amount needed to fund accounts under the FMHA loan agreements as of July 26, 1982 | ( 11,731.72) |
| Balance required in FMHA accounts as of August 7, 1980 | ( 11,653.07) |
| Respondent Baker's Downpayment | ( 4,000.00) |
| Title Insurance Premium | ( 2,325.00) |
| Add: | |
| 9% interest on $56,000 from August 7, 1980 to July 26, 1982 | 9,921.79 |
| July 1982 loan principal payment | 1,370.00 |
| Cash due on closing | $ 18,648.60 |

The court concluded by ordering that the closing occur on July 26, 1982 under the provisions of the accounting. In so ordering the court considered the terms of the FMHA loan agreements which restricted the owner's return of initial investment to 8% per annum on its investment. The partnership's total equity in the project was $69,177.00 which therefore limited an annual return on investment to $5,534.00.

Plaintiff-appellant McCue on behalf of the partnership contends error claiming:

that the sellers did not legally tender performance on August 8, 1980; in refusing to accept in evidence an exhibit containing declarations against interest on the part of the purchaser on the issue of legal tender; and that the buyer's refusal to accept legal tender on August 8, 1980 terminated the sale contract and buyer's right to specific performance. Appellant partnership as seller also contends that the accounting ordered by the court is defective because the date chosen for the beginning of the accounting, August 8, 1980, had no legal significance, that it orders monies already received by the buyer as additional credits, and, that relevant evidence for an accounting on defendant's behalf was wrongly rejected. It also contends that the court's finding on defendant's counterclaims were erroneous.

In this court-tried equity action the judgment or decree of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Review of the facts is in a light most favorable to the result reached. *McDermott v. Burpo*, 663 S.W.2d 256, 258 (Mo.App.1983).

We first review certain fundamental principles of partnership law in order that we may address the question of whether the partnership's warranty deed signed by one partner only on August 8, 1980 constituted legal tender. We conclude that the trial court correctly found that it was not.

The law of agency applies under the Uniform Partnership Law. § 358.040.-3, RSMo.1978. Individual partners are agents of the partnership, and the rights and liabilities with respect to each other and to third persons are largely determined by agency principles. *Martin v. Yeoham*, 419 S.W.2d 937, 951 (Mo.App.1967). Generally, each partner is at once a principal and

an agent of the partnership and the other partners in matters pertaining to the partnership business. *Id.* at 950. Thus, a partner may have actual authority which includes either express or implied authority to act for the partnership.

Section 358.080, RSMo.1978 permits real property to be held in the partnership name, and § 358.100 and § 358.090.-3(3), RSMo.1978 authorizes individual partners of the firm to convey the firm's real property unless the partnership agreement states otherwise and the person with whom the individual partners dealing has knowledge that the partner has no authority to act, and provided the conveyance does not destroy the firm's capacity to conduct its business. A partner's actual authority may be derived from the provisions of § 358.090, RSMo.1978, express provisions of the partnership agreement or the explicit direction of other partners. It may also be implied from the circumstances of express authority. A partner, like any other agent may have apparent authority. Apparent authority is the manifestation to a third person by one person that another is his agent. *Dudley v. Dumont*, 526 S.W.2d 839, 845 (Mo.App.1975). In a partnership relationship, it arises from some conduct, statement, or circumstance of another partner which reasonably lead a third person to believe the acting partner has authority to act for the partnership. It may coexist with actual authority either with the same or larger amounts of authority. *J.A. Fay & Egan Co. v. Brown Machinery Co.*, 14 S.W.2d 491, 496 (Mo.App.1929); Cf. Restatement (Second) Agency §§ 8, 27.

However when a third party learns that a partner has no actual authority to act for the partnership in a given matter, apparent authority terminates. Thus if a third party, before entering into a contract with the partnership learns that the partner with whom he is dealing has no actual authority to enter into the contract on behalf of the partnership, he cannot claim a binding contract. § 358.090.1, RSMo.1978.

We consider appellant's points on appeal in light of these fundamental principles and examine the relationship between the seller partnership, its real estate agent and the buyer Robert Baker.

■ There is evidence to support a finding that the partnership was bound by its real estate listing agreement with Hardin. The agreement was signed by Moyle a general partner who had apparent authority to sell real property of the partnership. § 358.100.1, RSMo.1978. There was no evidence that Hardin had knowledge of anything in the partnership agreement which would have limited Moyle's authority to act. Further, McCue accepted and ratified the listing agreement. The listing agreement was therefore valid and binding on both partners. *See Park and Tilford Import Corporation v. Vaux Hall Liquors,* 132 N.J.L. 178, 39 A.2d 404, 404–405 (1944).

■ At the time the buyer signed the sales contract and Moyle accepted it for the partnership he had no knowledge that McCue claimed that Moyle had no authority to act for the partnership or that McCue had attempted to disavow the listing contract by raising the price. The buyer's offer was to pay the full sum requested in the listing contract and McCue's acceptance of the listing contract extended apparent authority to Moyle to act for the partnership. The partnership was therefore bound by the contract to sell Eastwood Apartments, whether because Moyle had actual or apparent authority just as it was bound by the listing contract.

■ A principal is as conclusively bound to an innocent third party by the act of his agent in the exercise of apparent authority as he is by any actual authority conferred on him. *J.A. Fay & Eagan Co.,* 14 S.W.2d at 496. The sale contract was signed for the partnership by Moyle on April 2, 1980.

■ However authority of an agent to contract to sell real property does not

necessarily include authority to convey the property. 3 Am.Jur.2d *Agency,* § 118 (1962). On June 27, 1980 McCue's attorney notified the buyer's attorney that there was a problem and that McCue objected to both the listing and the sales contracts. The buyer was thereby notified that there was some dispute between the partners about Moyle's actual authority to convey the real property and the buyer was bound to know that if Moyle had no actual authority to proceed a conveyance of the property by Moyle alone would not transfer good title. Moyle's apparent authority terminated when the buyer received notice that McCue as principal no longer consented to Moyle's acts. *Distassio v. American United Life Insurance Company,* 238 Mo.App. 279, 179 S.W.2d 610, 613 (1944); Restatement (Second) of Agency, § 125, comment (a), § 136. McCue's letters of June 27, 1980 to the buyer's attorney and FMHA were notice of the partnership's dispute on the authority of Moyle to act for the partnership. The buyer had no duty to accept Moyle's statement of his authority and accept a partnership warranty deed signed only by Moyle. A third party cannot rely on an agent's statement of his authority. *Jeff-Cole Quarries, Inc. v. Bell,* 454 S.W.2d 5, 14 (Mo.1970); *Inland USA v. Reed Stenhouse, Inc.,* 660 S.W.2d 727, 733 (Mo.App. 1983).

■ We conclude therefore that the trial court's finding that the tender of a partnership warranty deed signed only by Moyle on August 8, 1980 was not legal tender was correct. The warranty deed was not accompanied by a title insurance policy in the amount of the purchase price. Section 358.100.1, RSMo 1978 provides the partnership with authority to recover real estate conveyed by a partner in the partnership name unless the partnership is bound by the provisions of § 358.090, RSMo.1978 (where partnership is bound by any act of a partner in the ordinary course of business unless he had no authority to perform that act and the person with whom

he was dealing knows there is no authority). Moyle's authority to enter into the listing contract and the sales contract authorized the court to order specific performance but the extent of Moyle's authority to execute a deed for the partnership was openly questioned and the deed was properly refused by the buyer.

Appellant's contention that a legal tender occurred is based upon Moyle's position that the buyer failed to state specific reasons to reject. Where the reasons for rejection of tender are obvious, an express objection is not necessary. *Simon v. Vandeveer,* 155 N.Y. 377, 49 N.E. 1043 (N.Y.1898); Restatement of Contracts; § 304. Here the reasons were clear. Moyle's authority was suspect and McCue refused to sign the deed. Further the mechanics liens had not been released, assignment of leases and transfer of tenant's deposits were not tendered and the title insurance requirement had not been met. Nor was the buyer required to make a tender of his contractual obligations. No tender is necessary when it is clear that it will not be accepted. *Cooper v. Mayer,* 312 S.W.2d 127, 130 (Mo.1958); *McDermott v. Burpo,* 663 S.W.2d 256, 262 (Mo.App.1983). The buyer was under no obligation to tender his own performance under those circumstances to keep from being in default.

However the partnership remained bound on the contract to sell entered into by Moyle acting under his apparent authority and when the buyer made a proper tender of performance a court could decree specific performance of the contract. *Kyner v. Bryant,* 353 Mo. 1212, 187 S.W.2d 202, 206 (1945). The buyer's tender occurred in the filing of his petition on November 5, 1980 in which he alleged he was ready, willing and able to perform his part of the contract. This is an adequate tender in a suit for specific performance. *Cooper v. Mayer,* 312 S.W.2d at 130.

Appellant's argument that the buyer's failure to proceed on August 8, 1980

terminated the contract which contained a clause making time of the essence. The trial court properly rejected this contention upon a finding supported by the evidence that Moyle's notice setting a closing for August 8, 1980 was unreasonable. The trial court's finding is further supported by the fact that the seller made no legal tender on that date. Appellant waived the time is of the essence provision of the contract. *Cooper v. Mayer,* 312 S.W.2d at 130. 91 C.J.S. *Vendor and Purchaser,* § 104(g) (1955).

McCue also claims error on behalf of the partnership in the trial court's exclusion from evidence of a letter from the buyer's attorney dated July 30, 1980 and addressed to Moyle's attorney. The exclusion was based upon an objection that the letter contained an offer of compromise. The court's ruling was correct. The letter took note of McCue's objection to Moyle's authority and indicated that if Moyle presented the deed the attorney would recommend that the buyer prepare a check payable to the partnership for the purchase price or bring a suit for specific performance. It is clear that both the seller and buyer were aware that their dispute might wind up in court. The buyer's letter of July 30, 1980 was an attempt to avoid litigation. It was an offer of compromise and inadmissible as such.

We next address the issue of whether there was error in the court's order of an accounting necessitated by the delayed closing. Once the court determined that the buyer was entitled to specific performance the buyer was entitled to an account from appellant from the date he was entitled to possession. *Ragan v. Schreffler,* 316 S.W.2d 659, 662 (Mo.App. 1958). We find that the court committed error in beginning the accounting on August 8, 1980. An accounting is authorized only from the date the buyer made formal tender, which here is the date of suit, November 5, 1980 and not as the trial court

ordered from August 8, 1980. There is evidence to support the trial court's finding that the delay in satisfying the conditions for marketable title was caused by the seller. The buyer's right to possession began on the date of the buyer's legal tender and that is the date when the accounting should have begun. *Hellrung v. Hoechst,* 384 S.W.2d 561, 564 (Mo.1964).

For the reasons mentioned the court correctly found against appellant on appellant's counterclaim against the buyer.

■ As Moyle was authorized to enter into the listing and sales contracts the court correctly found against appellant on its counterclaim against the real estate agents. The agents' commissions were earned when they produced a ready, willing and able buyer. They were entitled to their commission. *Marrs v. Twitty,* 635 S.W.2d 374, 376 (Mo.App.1982). *E.A. Strout Realty Agency, Inc. v. McKelvy,* 424 S.W.2d 98, 101 (Mo.App.1968).

■ McCue's contention on behalf of the appellant that the original listing contract was replaced by a contract calling for a larger sale price is not supported by the evidence. Appellant had the burden of proving by clear and convincing evidence, *General Insurance Company of America v. Klein,* 517 S.W.2d 726, 730 (Mo.App. 1974), that the discharge of the original contract was contemporaneous with and a result of the consummation of a new contract. All the parties must agree to the creation of a new contract and extinguishment of the old. *McHenry v. Claspill,* 545 S.W.2d 690, 692–93 (Mo.App.1976). Here Hardin's real estate agency never agreed to a new listing contract and the obligations under the original listing contract were unchanged. When the buyer made legal tender that he was ready, willing and able to close the real estate agents were entitled to their commission. *Welek Realty Inc. v. Juneau,* 596 S.W.2d 495, 497 (Mo. App.1980).

The judgment decreeing specific performance is affirmed. The judgment for accounting is reversed and remanded so that an accounting from November 5, 1980 to the date of actual closing may be accomplished. Any contention of overlapping debits and credits should be considered on remand.

We affirm in part and reverse and remand for further proceedings not inconsistent with this opinion.

KAROHL, P.J., and LOWENSTEIN, Senior Judge, concur.