JULIA ARPE ET AL., APPELLANTS, v. JOSEPH E. BROWN ET AL., RE-SPONDENTS.—51 S. W. (2d) 225.

Kansas City Court of Appeals. June 13, 1932.

*D. W. Shackelford* and *W. V. Draffen* for appellant.

*Gardner Smith* and *D. C. Chastain* for respondent.

BLAND, J.—This is a suit in equity, in which the plaintiffs seek to hold the defendants as agents and fiduciaries of one William W. Trigg, in relation to a $3500 note. The court sustained general demurrers of the defendants to the petition. Plaintiffs refused to plead further and judgment was entered in favor of defendants. Plaintiffs have appealed.

It is the contention of plaintiffs that Trigg was acting as their agent in the matters involved herein covered by defendants' agency for Trigg; that defendants were guilty of breaches of their fiduciary relation to Trigg, and that plaintiffs, in bringing this suit, have ratified the conduct of Trigg in acting as their agent, plaintiffs' interest in said matters being undisclosed to defendants.

The question to be determined is whether the facts set forth in the petition state any cause of action against the defendants. The petition reads as follows:

"1. That The Walton Trust Company is, and at all of the times hereinafter mentioned was, a corporation incorporated and existing

in pursuance of the laws of the State of Missouri, engaged in making loans secured by mortgages on farm lands and selling said loans;

"2. That, continuously for more than 20 years next before January 1, 1928, William H. Trigg, under the name of William H. Trigg & Company, in his own behalf and in behalf of other persons who had entrusted money to him, as agent, for investment, was engaged in buying loans from the defendant The Walton Trust Company;

"3. That during all of the time between December 1, 1922, and July 28, 1928, the defendants Joseph E. Brown, J. Brown Walton, Freeman B. Walton and Walter E. Williams were officers, directors and agents of the defendant The Walton Trust Company and actively engaged in the management and control of its business and affairs.

"4. That said Trigg trusted and relied upon the defendants to select for him the loans which he bought from The Walton Trust Company, and to collect for him the interest and principal of said loans, and to inform him of defaults in the payment of interest or principal of any of said loans, or in the payment of taxes on any lands by which any of said loans were secured, and to take and hold for him possession of the lands securing any of said loans where there had been default in the payment of interest; that the defendants accepted said trust and reliance and did select for him the loans which he bought from The Walton Trust Company, and assumed to collect for him the interest and principal of said loans, and to ascertain and report to him any default in the payment of interest or principal of any of said loans, or in the payment of taxes on the lands by which any of said loans were secured;

"5. That, on December 14, 1922, the defendant The Walton Trust Company made a loan of $3500 to Jane Crittenden, due December 14, 1929, bearing interest from date at the rate of 6 per cent per annum, payable annually, and as evidence of said loan, she, on that day, executed to said The Walton Trust Company her note for $3500, dated December 14, 1928, due December 14, 1929, and bearing interest from date at the rate of 6 per cent per annum, payable annually, and a first mortgage on certain lands in Muskogee County, Oklahoma, to secure the payment of said note and interest thereon; that, on said December 14, 1922, said Jane Crittenden also executed to said The Walton Trust Company her note for $245, payable in two installments of $122.50 each, the first payable December 14, 1923, and the second payable December 14, 1924, and a second mortgage on said lands to secure its payment;

"6. That, on January 25, 1923, said $3500 note and accrued interest, amounted to $3,524.50, and on that day the defendants selected said loan as one for said Trigg to buy, charged said sum of $3,524.50, to his account, endorsed said note without recourse and transmitted

it by mail to him; that said Trigg accepted and retained said note, and credited said The Walton Trust Company with said sum of $3,524.50; that at the time of so transmitting said note to said Trigg and ever after the defendants concealed from said Trigg the facts of the existence of said $245 note and said second mortgage by which it was secured;

"7. That on February 27, 1923, said Trigg had in his hands money which the plaintiffs Julia Arpe and Hugh Roberts had, severally, entrusted to him, as agent, for investment; that on that day, he charged against the account of the plaintiff Julia Arpe $1,010.50, for an undivided 2/7 interest in said $3500 note, and charged against the account of the plaintiff Hugh Roberts $2,526.50, for an undivided 5/7 interest in said $3500 note; that from February 27, 1923, until his death on August 3, 1929, said Trigg held an undivided 2/7 interest in said $3500 note as agent for the plaintiff Julia Arpe and an undivided 5/7 interest in said note, as agent for the plaintiff Hugh Roberts.

"That, on April 30, 1924, the defendants commenced proceedings for the foreclosure of said second mortgage and on July 13, 1925, at a sale under said foreclosure proceedings, while the defendants were still acting as fiduciaries of said Trigg in relation to said Jane Crittenden loan of $3500, they caused said lands to be bought in the name and behalf of the defendant, The Walton Trust Company, and the title thereto to be conveyed to it in its own name and behalf; that none of the defendants ever disclosed to said Trigg that said foreclosure proceedings had been commenced, nor the fact that said lands had been sold under said proceedings, nor the fact that the title to said lands had been conveyed to the defendant, The Walton Trust Company, in its own name and behalf and was being so held by it.

"9. That, after said lands had been so conveyed to said The Walton Trust Company, as hereinbefore stated, the defendants represented to said Trigg that said The Walton Trust Company had taken and was holding the title to said lands for him; that said representation was false and by the defendants known to be false when made and was made with the fraudulent intent that said Trigg should rely upon it as true and be thereby prevented from discovering that said The Walton Trust Company was holding the title to said lands in its own name and behalf; that said Trigg did rely upon said representation as true and was thereby prevented from discovering that said The Walton Trust Company was holding the title to said lands in its own name and behalf; that said representation was made with the further fraudulent intent that said Trigg should rely upon it as true and be thereby induced to reimburse said The Walton Trust Company for expenses, alleged by the de-

fendants to have been incurred by it in said foreclosure proceedings and in the payment of taxes on said lands; that said Trigg did rely upon said representations as true and was thereby induced to reimburse said The Walton Trust Company in the sum of $497.91; that at the time said lands were so conveyed to said The Walton Trust Company, as hereinbefore stated, their value was more than $3800, but that such value has since declined until it is now less than $2000.

"10. That, since the title to said lands was conveyed to said The Walton Trust Company, as hereinbefore stated, the defendants have permitted parts of it to be sold for taxes, so that said The Walton Trust Company has been thereby divested of the title to said parts of said lands.

"11. That on August 3, 1929, said William W. Trigg died.

"12. That, by reason of the facts hereinbefore stated, the plaintiffs have no adequate remedy at law.

"13. That the plaintiffs declare themselves willing to accord to the defendants and to each of them all equities to which the court by its decree in this action may adjudge them to be entitled.

"14. Wherefore, plaintiffs pray the court to order, adjudge and decree that the defendants shall account for and pay over to the plaintiffs, a sum of money equal to the value of said lands at the time the title thereto was conveyed to said The Walton Trust Company, as hereinbefore stated, with interest thereon from the time that said title was so conveyed at the rate of 6 per cent. per annum and for such other and further relief, orders, judgments and decrees as the court may deem just and equitable."

Plaintiffs quite clearly set forth, in their brief, what they consider that the facts appearing in the petition establish in the way of the duties of the defendants to Trigg and what they consider were the violations or the breaches of those duties. However, the damages sustained by plaintiffs, as a result of such violations and the nature of the recovery that plaintiffs are entitled to, under the facts stated in the petition, are not clearly disclosed by them in this court.

Defendants contend that the petition shows that plaintiffs were the undisclosed principals of Trigg, as there is no allegation that defendants knew that Trigg was acting for plaintiffs; that while defendants might have undertaken to act in a fiduciary capacity for Trigg,. the relationship was personal in its nature and, therefore, they cannot, without their consent, be held as fiduciaries for plaintiffs; that if there was any violation of their obligations to Trigg, the cause of action arose in his favor and the petition does not allege that said cause of action, if any, has been assigned by Trigg to

plaintiffs; that, in any event, the first violation alleged was in defendants having a second deed of trust upon the property when they sold their first to Trigg. But that this violation of trust, if any, was before plaintiffs acquired any interest in the note mentioned in the petition, and that there was no assignment by Trigg to plaintiffs of any cause of action growing out of this violation. Defendants urge other reasons in support of their contention that the court properly sustained the demurrers to the petition.

We are of the opinion that the petition fails to state any cause of action and, while there may be other grounds for so deciding, we prefer to base our conclusions upon the following:

The petition discloses that the duties of the defendants to Trigg were in reference to the note in controversy. It alleges that they were to collect for him the interest and the principal of all loans he purchased of the Trust Company, to ascertain and report to him any default in the payment of interest or principal on them and to take and hold for him possession of the lands upon which the loans were secured. It was also their duty to report any delinquency in the payment of taxes on such lands. The breaches of duty, according to the allegations in the petition, consisted of defendants having a second mortgage upon the property in question upon which they sold Trigg the first, in having the second mortgage foreclosed and buying in the property in the name and on behalf of the defendant, The Walton Trust Company, the foreclosure and the buying in of the same by The Walton Trust Company, being without the knowledge of Trigg; the representation to Trigg that the Trust Company had taken and were holding title to the land for Trigg when, as a matter of fact, the Trust Company was holding title in its own name and behalf; the reliance of Trigg upon said representation, thereby preventing him from discovering the true facts, and in inducing Trigg to reimburse the Trust Company for expenses of the foreclosure proceedings and the payment of the taxes on the land. These are the only breaches claimed in plaintiffs' brief. They all grow out of the circumstance, that is, the holding of a second deed of trust upon the land by the Trust Company without Trigg's knowledge.

We may assume, for the purpose of the case, that on or after February 27, 1923, Trigg was acting as the agent for plaintiffs in holding the note and mortgage for them. Just what his duties were in relation to the note and mortgage securing it, is not clearly disclosed in the petition, but if they consisted of any active duties at all, we cannot assume that they were any more than to collect the interest and seeing to it that the mortgage continued to be, what it was when he transferred it to them, a first lien on the land un-

impaired and to protect the loan by foreclosure, if necessary. In other words Trigg was merely to do the necessary things to protect the note and mortgage. [See Piggot v. Denton, 46 S. W. (2d) 618.] We may assume, also, that the petition states facts sufficient to show that defendants were fiduciaries of Trigg for the expressed purposes that we have named, that is, to collect the interest and the principal on the note in controversy, to ascertain and report any default in the payment of the interest or principal upon the note and in the payment of taxes upon the land by which the note was secured and to take and hold for him possession of the land in case of default in the payment of interest on the note. However, there is nothing in the petition tending to show that defendants even knew that Trigg was not acting solely for himself, much less that they consented to the arrangement between Trigg and plaintiffs. Neither is there any fact alleged tending to show that plaintiffs consented to the arrangement between Trigg and the defendants. There is no fact alleged showing any privity between plaintiffs and defendants.

"Where no privity exists between the subagent and the principal, either by express or implied agreement or the usages and customs of business, and the sub-agent is merely a subaltern of the original agent, and as such is directly responsible, not to the principal, but to the original agent, unless the sub-agent has by express promise made himself liable to the principal." [2 C. J., p. 692.] [See, also, Butler County v. The Boatmen's Bank, 142 Mo. 13, 31; Landa v. Traders Bank of Kansas City, 118 Mo. App. 356.]

As before stated, there is no privity alleged between plaintiffs and defendants and there is nothing alleged in the petition authorizing the former to hold the latter as their agents without the latter's consent. There is no allegation that Trigg has assigned to plaintiffs his cause of action, if any, against defendants. [Steele v. Brazier, 139 Mo. App. 319.] It is quite apparent that the petition states no cause of action against the defendants.

There are other reasons why the petition is deficient.

There is no express allegation, and we think none can be implied from the facts, that Trigg's agreement with defendants wherein he reimbursed the Trust Company in the sum of $497.91 covering expenses of foreclosure upon the second mortgage and taxes, in consideration that the Trust Company hold title to the land for him, was acting as agent for the plaintiffs. There is nothing alleged in the petition to show that there was, at any time, a default in the first mortgage. The terms of this mortgage are not set forth, so we do not know whether the failure of the owner of the equity of redemption to pay taxes on the land placed the mortgage in default. There is nothing appearing from the petition indicating that either

the principal or any part of the interest was due at the time of the foreclosure of the second mortgage. Under such circumstances, we think it cannot be implied that Trigg's agency extended to paying out money on behalf of his principals (plaintiffs) without an allegation that it was done at their direction or with their consent, for the purposes of acquiring title to the land. [2 C. J., p. 644.] Trigg had no implied authority to have a sub-agent for the discharge of his duties to plaintiffs, those duties called for services personal in their nature, and therefore, involved special confidence and trust. [2 C. J., pp. 683, 687.] The acquisition of the title to the land was not necessary to protect plaintiffs' mortgage in any manner. Therefore, we are constrained to hold that there is nothing in the petition tending to show that Trigg had implied authority to acquire title to the land for plaintiffs, and we do not think, for reasons to be hereinafter set forth, that plaintiffs, in bringing this suit, can be said to have ratified his act in so acquiring it.

It is a well settled principle that a person may not act as agent of another when his interests are adverse to those of his principal and, undoubtedly, the acquisition of the title to the land upon which the mortgage stood, placed Trigg, who was the agent of the plaintiffs, if any, in the matters that we have spoken of, in a position where his interests were adverse to those of the plaintiffs. It may be that upon the theory of the presumption of innocence, if no facts were alleged in the petition tending to show that the acquisition of the title to the land by Trigg was for himself and not for the plaintiffs, it would be presumed that Trigg acquired the title for plaintiffs, although he was not authorized by them to do so, for if he did not so acquire it he would be doing something inconsistent with his agency and therefore unlawful. However, the presumption of innocence is one purely of law, and when the facts, or inferences from the facts, are disclosed showing the absence of innocence, the presumption is overcome. [22 C. J., pp. 144, 157.]

If Trigg were acquiring title to the land for the benefit of the plaintiffs, his principals, he would not have entered into an agreement with defendants that The Walton Trust Company should hold title for him, but for his principals. There is nothing in the petition to show why he could or should not have had the Trust Company hold the title for plaintiffs instead of himself. The taking of title by an agent in his own name, he paying the consideration, as under the circumstances in this case, raises the inference that Trigg was not acting for the plaintiffs but for himself. There can be no ratification unless Trigg was acting in that matter for the plaintiffs. [2 C. J., p. 467.] It will be noted that, in this connection, the petition does not allege that plaintiffs were called upon by Trigg

to repay him the $497.91 that he paid out in reference to this matter, or that plaintiffs, in fact, did repay Trigg, or that they were under any obligation to pay him this amount. In the absence of an expressed agreement to pay it, they would be under no implied obligation to do so, unless Trigg purchased the land for them. There is no allegation that he did so. The fact that he sought to acquire title in his own name, or in the name of another for his benefit, negatives the idea that he was so doing. This may have been a breach of trust on the part of Trigg, but this suit is not against and the cause of action is not based upon any such theory, or upon the theory that Trigg and defendants conspired together for the purpose of cheating plaintiffs.

So the only thing, if any, that plaintiffs can complain of that defendants did in reference to the holding of the second deed of trust and its foreclosure, is of something that resulted in adversely affecting the value of their note and nothing is alleged in the petition tending to show that this was done. Whether the land was acquired by the Trust Company, either for itself or Trigg, plaintiffs' mortgage, so far as the allegations of the petition are concerned, is just as good and as valuable as it was before.

We will, therefore, further examine the petition to discover the things done by defendants that are complained of, leaving out the representation made by the defendants to Trigg concerning the foreclosure and the acquisition of the title to the land. Even assuming that defendant at all times acted in a fiduciary capacity to plaintiffs, through Trigg, what was the effect of their having the Trust Company acquire the title to the land? As before intimated, if their conduct resulted in injury to the first mortgage owned by the plaintiffs, then the latter would undoubtedly have a cause of action for the damages done, but there are no facts alleged tending to show any such theory. As we understanding plaintiffs' contention the acquisition of the title by the Trust Company, under the circumstances, gave rise to a constructive trust in the land in favor of plaintiffs. Assuming this to be true, what can plaintiffs recover as a result thereof? Apparently in order to lay the foundation for a recovery of a money judgment plaintiffs allege facts showing that they cannot get title to the land conveyed to them by defendants, for, in this connection, they state that parts of the land have been sold for taxes and that, thereby, the Trust Company has been devested of title to such parts of the land.

It is true that, if an agent undertakes to act for himself and at the same time for his principal, without the knowledge of the latter, and reaps advantage by his double dealing, the law will take his gains from him. [Garner v. Woods, 24 S. W. (2d) 708, 709.]

."It is a general principle that a trustee will not be allowed to acquire an interest adverse to the trust, and that when he does purchase, in his own name, an outstanding title, encumbrance, or claim against the estate or *cestui que trust*, or any other interest in the trust property, such purchase will be held to be inure to the benefit of the *cestui que trust*." [39 Cyc., p. 298.]

However, defendants are now in no position to convey the land to plaintiffs and, therefore, all they could possibly recover would be damages, and they have shown no damages done to them. Defendants seem to think that plaintiffs are attempting to sue them for a conversion of the land. Of course, if this be true, the suit cannot be maintained. [Land & Gravel Co. v. Comm. Co., 138 Mo. 439.]

There is no claim in plaintiffs' brief that there was any breach of trust on the part of the defendants in permitting parts of the land to be sold after the Trust Company acquired title to it, and it would appear that no such breach occurred under the circumstances. While the petition alleges that defendants were to notify Trigg of any unpaid taxes, there is no allegation that defendants were to pay the taxes after the property was sold and title procured by the Trust Company for Trigg. When the Trust Company agreed to hold the title for Trigg a new relationship sprang up between them resulting in the agency relationship theretofore existing coming to an end. It would appear, in the absence of any understanding between Trigg and defendants, that it would be Trigg's duty to pay the taxes and not defendants,' as Trigg was the real owner of the land, although the title stood in the Trust Company.

However, plaintiffs say that if the petition states facts entitling them to any relief, either legal or equitable, or to a different relief than that prayed for, a general demurrer to it cannot be sustained, and that plaintiffs are, at least entitled to recover of defendants the sum of $497.91 which Trigg paid them for the land. From what we have said there is no merit in this contention. As before stated, there is no privity between plaintiffs and defendants. In addition to this Trigg did not pay this money for plaintiffs. The petition does not state any circumstances under which it was paid tending to so show. As we have before said, the inference to be drawn is that Trigg paid the money to acquire title for himself. Therefore, there was no agency of Trigg for plaintiffs in acquiring it and they cannot say that they ratified his conduct in paying the money by bringing this suit. [2 C. J., p. 467.] The judgment is affirmed. *Trimble, P. J.*, concurs; *Arnold, J.*, absent.