**BATES COUNTY NATIONAL BANK,**
**Plaintiff–Respondent,**

v.

**Norma Jean WILSON and Trent Wilson, Defendants–Appellants.**

**No. WD 40100.**

Missouri Court of Appeals,
Western District.

March 14, 1989.

Harold L. Caskey, Butler, and Jeri Leigh Caskey (argued), Alton, for defendants-appellants.

Ralph E. Smith, Butler, for plaintiff-respondent.

Before NUGENT, P.J., and SHANGLER and CLARK, JJ.

NUGENT, Presiding Judge.

Defendants Norma Jean Wilson and Trent Wilson appeal from the trial court's decision granting a judgment for replevin in favor of plaintiff Bates County National Bank. The court ruled that the plaintiff bank's security interest in an automobile, a pickup, and various pieces of farming equipment and the subsequent default by Charles and Norma Wilson on the notes secured by those items entitled the bank to possession. The defendants argue that the farming equipment constituted partnership property that was not subject to attachment for the private debts of Charles and Norma Wilson. We affirm in part and reverse in part.

The bank presented four separate notes signed by Charles Wilson, now deceased, and his wife, Norma Jean Wilson.

The following chart describes those notes.

| NOTE NO. | AMOUNT: | DATE: | PURPOSE: | COLLATERAL: |
|---|---|---|---|---|
| 3642 | 36,600 | 6/22/83 | Chemical bills | 1983 Cooe. trailer<br>1979 Oldsmobile<br>1978 Chev. Pickup<br>41' Krause leveling disk (released 3/28/86)<br>Demco pull-type sprayer. |
| 3720 | 26,000 | 7/22/83 | Seed bills | 140 acres soybean crop<br>Twelve row Yetter cultivator (added 1/24/84) |
| 3841 | 2,850 | 9/10/83 | Purchase of named equip. | John Deere six row crop head. |
| 3851B | 4,110 | 9/14/83 | Purchase of named equip. | John Deere Grain cart |

All of the notes and security agreements contained the following clause:

> Maker hereby grants to Bank a security interest in collateral described below, in proceeds and products thereof, and in similar after acquired property, as permitted by law. The security interest granted secures this Promissory Note and all other liabilities and obligations of Maker to holder, including future advances and liabilities which may be hereafter contracted or acquired by Maker.

The bank president, Bill Gepford, testified that all of the above notes were in default at the time of the trial.

Mr. Gepford also testified that he knew nothing about Charles Wilson's involvement in a partnership until the bank brought this replevin action. He had known Charles for about twenty years. After he made the loans to Mr. Wilson, he visited the farming operation. During that visit Mr. Wilson mentioned that his son, Trent, helped him run the operation and that his son-in-law, William Bauer, lived on the farm. Although Mr. Wilson mentioned his son's and his son-in-law's involvement in the farming operation, he never mentioned to Mr. Gepford the existence of a partnership.

Mr. Gepford identified the purpose for each of the loans. As indicated in the above chart, Mr. Wilson intended to use the loans to pay farming expenses or to purchase farming equipment. Mr. Gepford contacted the John Deere dealer to obtain the serial number of the grain cart before he issued the loan used to purchase it. The amount of the check drawn on the B & W farms account to pay the balance on the cart (after B & W farms traded in other equipment) equaled the amount of the $4,110 loan.

Trent Wilson testified that he had entered into two partnerships with his father. He and his father operated a partnership called Wilson Farms, and he, his father and William Bauer operated B & W Farms. He identified two written agreements, dated March 1, 1983, formalizing the partnership agreements. The purpose of the partnerships, as described in those agreements, is to engage in the farming business in Butler and Vernon counties. The agreements also restrict the authority of a partner to encumber partnership property or incur debts on behalf of the partnership without the consent of all of the partners.

Trent testified that he did not consent before Charles Wilson used the partnership property as collateral for the bank loans. His father later told him of the chattel mortgages, but he took no action upon learning that. He believed that his father had the right to mortgage his own interest in the property. The partners had all been present for previous transactions.

Trent presented purchase orders and checks drawn on the B & W Farms accounts that showed that partnership funds had been used to purchase the farming equipment at issue. The title to the Cooe. trailer listed the owners as Charlie and Trent Wilson. Mr. Gepford testified that he saw the title before issuing the note secured by that trailer, but did not gather from the title that Charlie and Trent owned the property' as partners. Charles and Norma Wilson showed deductions for depreciation of farming equipment on their tax returns as did Trent Wilson and his

wife. B & W Farms did not show such depreciation on the partnership tax returns.

The trial court found that the loans had financed the partnerships' farming operations and that Charles Wilson had been acting for the partnerships when he incurred the debts. The court entered judgment for the plaintiff bank for possession of the equipment or, in the alternative, for $24,400.00 for the value of the equipment. It also entered a one-dollar judgment for the plaintiff for the lost use of the equipment.

■ On their first point on appeal the defendants argue that the trial court erred in finding that a valid security interest existed in the farming equipment. They contend that because the equipment belonged to the partnership, Charles Wilson could not assign it as security for his personal debts. Clearly, specific partnership property cannot be assigned by a partner to secure personal debts. *See* § 358.250.2(2).[1] An attempted assignment for such debts is void. *See Columbia Mortgage Co. v. Hsieh,* 42 Wash.App. 114, 708 P.2d 1226, 1229 (1985); *Shapiro v. United States,* 83 F.Supp. 375, 377 (D.Minn.1949).

■ Specific partnership property may, however, be assigned to secure partnership debts. § 358.250.2(2). Therefore, to have created a valid security interest in the farming equipment, the notes that those chattels secure must represent partnership debt. The trial court found that, "whether he knew it or not, [Charles Wilson] was acting for the partnership and the partnership got what it needed to operate from the Bates County National Bank and from other places." To have been acting for the partnership in securing those loans, however, Mr. Wilson must have had some authority. *See* § 358.090. We find no substantial evidence to support a finding of that authority.

A partner, as an agent of the partnership, may bind the partnership to a contract if he has either actual or apparent authority to do so. *See Baker v. McCue—*

1. All sectional references are to Revised Statutes of Missouri, 1986.

*Moyle Development Company*, 695 S.W.2d 906, 911 (Mo.App.1984). Actual authority may be derived from § 358.090, from express provisions of the partnership agreement, from the directions of the other partners, or as an incident of other actual authority. *Id.* Section 358.090 provides authority only when the partner is acting in the name of the partnership. That provision cannot apply here because the notes named only Charles and Norma Wilson as debtors. Moreover, no actual authority flows from the partnership agreements in evidence in this case. Those agreements specifically prohibited any partner from executing a note for the partnership without the written consent of the other partners. The only evidence in this case consisted of Trent Wilson's testimony that he did not consent to the loans. Charles Wilson, therefore, had no actual authority to bind the partnerships on the notes at issue in this case.

■ Nor does evidence of apparent authority appear in this record. "Apparent authority is the manifestation to a third person by one person that another is his agent.... In a partnership relationship, it arises from some conduct, statement, or circumstance of another partner which reasonably leads a third person to believe the acting partner has authority to act for the partnership." *Baker, supra,* 695 S.W.2d at 911. The bank president testified that he did not know of the partnerships' existence until the instant litigation commenced. Clearly, then, the bank did not believe it was lending money to the partnerships. Therefore, Mr. Wilson had no apparent authority to bind the partnerships on the notes.

■ One who is acting as an agent for the partnership may also gain authority after the fact. When an agent purports to act for his principal and enters a contract without authority, the principal may subsequently ratify the contract and thereby be bound by it. *Wilks v. Stone,* 339 S.W.2d 590, 595 (Mo.App.1960). The principal's acceptance of the benefits of the contract with full knowledge of all the material facts may imply ratification. *Id.* at 595–96.

But a principal cannot ratify an agent's contract unless the agent purported to act for the principal at the time of contracting. *Arpe v. Brown,* 227 Mo.App. 60, 51 S.W.2d 225, 229 (1932). Here, the partnerships received some benefits of the contract. No evidence, however, establishes that Mr. Wilson purported to act for the partnerships or that the other partners knew of the circumstances of the loans. Therefore, the partners could not have ratified the agreements.

From this record we conclude that Charles Wilson had no authority to obtain loans for the partnerships from Bates County National Bank. Similarly, he had no authority to pledge partnership property as collateral for those loans. Section 358.-080.2 provides, "Unless the contrary intention appears, property acquired with partnership funds is partnership property." Trent Wilson presented purchase orders showing that the farming equipment has been purchased in the name of B & W Farms and paid for with funds drawn on the B & W Farms checking account. Trent testified that the partnership owned all of the equipment. The only contrary evidence consisted of Mr. and Mrs. Wilson's certification to the bank that they owned the equipment being pledged as collateral for the notes. Because the trial court based its decision on its finding that the notes were used to fund the partnership, it apparently believed that the partnership did indeed own the equipment. Mr. Wilson had no authority to execute the notes on behalf of the partnership, therefore, he had no authority to pledge the partnership property to secure those notes. His attempt to do so was contrary to the partnership agreements and contrary to § 358.250.2(2).

■ Although Mr. Wilson had no authority to encumber partnership property, that fact will not defeat the bank's security interest in two pieces of the property. The bank lent $4,110 to purchase the John Deere Grain Cart and for $2,850 to purchase the John Deere six row crop head. Section 400.9–107 provides that one who advances funds to allow a debtor to purchase goods obtains a purchase money se-

curity interest in those goods when the funds are used for that purpose. The evidence in the record supports the court's finding that Mr. Wilson used the funds to purchase that equipment. Therefore, the bank obtained a purchase money security interest in the grain cart and the crop head. Consequently, although Mr. Wilson had no authority to bind the partnership on the note, B & W Farms took possession of the collateral for that note subject to the bank's security interest in it.

■ The defendants argue that if we find that the bank holds a purchase money security interest, as we have, Norma Wilson should be able to redeem the collateral by paying the balance of the notes that generated the purchase money. A purchase money security interest in collateral exists only to the amount of money advanced for the purchase. *See John Deere Co. v. Production Credit Association,* 686 S.W.2d 904, 907 (Tenn.Ct.App.1984). In the instant case, however, the defendants have argued, and we have concluded, that the B & W Farms partnership owns the collateral. Since Norma Wilson is not a partner in that firm, she has no right to possession of the equipment. Therefore, her offer at trial to pay note No. 3841 gave her no right to redeem the equipment securing that note.[2]

We hold that the farming equipment listed as collateral in the notes numbered 3642 and 3720 belonged to the Wilson Farms Partnership and to the B & W Partnership and that Charles Wilson had no authority to assign that equipment to plaintiff Bates County National Bank as collateral. Therefore, the plaintiff holds no valid security interest in that equipment. The bank, however, in the notes numbered 3841 and 3851B advanced the purchase money used to obtain the collateral listed in those notes. Therefore, B & W Farms' right to possess that property is subject to the plaintiff's purchase money security interest in it. Finally, Norma Wilson, who is not a member of the partnership, holds no right to redeem that property. Accordingly, we reverse the judgment and remand the case to the trial court for further proceedings consistent with this opinion.

All concur.

---

2. The parties do not argue that the partnership may redeem the equipment subject to the pur-

chase money security interests. Therefore, we do not reach that issue.