NUMBER 13-06-257-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 
 

MYRIAM HERSZAGE, Appellant,


v.
 


JORGE HERSZAGE, M.D., Appellee.

 


On appeal from the 139th District Court of Hidalgo County, Texas.


 




MEMORANDUM OPINION



Before Justices Yañez, Benavides, and Vela


Memorandum Opinion by Justice Benavides




 Appellant Myriam Herszage ("Myriam") appeals a judgment rendered on a mediated
settlement agreement incident to her divorce from appellee, Jorge Herszage, M.D.
("Jorge"). By multiple issues, Myriam argues that the trial court erred in rendering judgment
on a mediated settlement agreement that (1) was revocable and properly revoked before
judgment, and (2) was fraudulently induced. For the reasons stated herein, we affirm. 

I. BACKGROUND

 In 2004, Jorge filed for divorce from Myriam, his wife of many years. Myriam
answered the suit and filed a counterclaim for divorce, alleging, among other things, that
she was entitled to a disproportionate share of the community assets as a result of gifts of
community property by Jorge to others. 

 After discovery had been served but before Jorge's answers were due, the trial court
ordered the parties to mediation. The parties mediated the division of property for seven
hours on Friday, February 3, 2006, after which they appeared to reach an agreement. The parties' mediated settlement agreement ("MSA") consisted of five pages. The
first two pages contained boilerplate language. These pages provided, for example, that
the parties entered the agreement "freely and without duress after consulting with
professionals of his or her choice," that the agreement is "signed voluntarily and with the
advice and consent of counsel on the dates set out below and subject to the court's
approval," and that "the parties agree to appear in court at the first available date to
present evidence and secure rendition of judgment in accordance with this Mediated
Settlement Agreement." Most importantly, the second page stated the following in capital
letters, underlined type: "THIS AGREEMENT IS NOT SUBJECT TO REVOCATION." The
first two pages of the agreement were not signed or initialed by any party. 

 The last three pages, entitled "Exhibit A," contained the division of property. The
parties' real property, personal property, and bank accounts with their respective values
were listed in a grid, which allocated each item to one of the parties. The remainder of the
document provided for certain conditions and obligations of the parties regarding, among
other things, residency in the real property, attorneys' fees, and inventories. Exhibit A's
final provision required Myriam to dismiss with prejudice her counterclaim against Jorge,
insofar as it related to the Merrill Lynch account in Jorge's sister's name, stating: "Myriam
dismisses with prejudice any and all claims against Jorge and/or his family members
relating to the Merrill Lynch accounts in Jorge's sister's name, and all other gifts previously
made by Jorge to others." The value of this Merrill Lynch account is not listed on the
document. Each page of Exhibit A was either signed or initialed by Jorge and Myriam. 
The last page was also signed by the attorneys. 

 On February 6, 2006, the Monday following mediation, Jorge's counsel appeared
before the trial court to obtain judgment on the MSA. Myriam's counsel appeared, and
Myriam attempted to revoke her consent to the MSA. At the hearing, Myriam admitted that
she signed the MSA, but she alleged that when she signed it, the first two pages
(containing the non-revocation language) were not attached to Exhibit A (containing the
division of property). Myriam insisted that the revocation language was not there when she
signed the agreement. 

 Additionally, Myriam stated that Jorge had not disclosed to her that there was a
million dollars in a Merrill Lynch account that he had put in his sister's name. When asked
by the court her reason for revoking the agreement, she admitted that the million dollar
account was discussed at the mediation.


 Jorge's counsel then told the trial court that the account was discussed extensively
prior to the mediation. Jorge's counsel stated Myriam agreed to release her claim to the
Merrill Lynch account in exchange for allocating several buildings to Myriam as her
separate property. Apparently Myriam had claimed these buildings as her separate
property, but Jorge's counsel believed she did not have enough evidence to trace the
purchase of these buildings to Myriam's separate funds. Jorge then testified under oath
that the Merrill Lynch account was discussed "ad infinitum" and "ad nauseam," and he
confirmed that the claims to the account were released at the mediation in exchange for
the allocation of a building to Myriam's separate property. 

 In response to questions from the court, Mark Montalvo, Myriam's counsel, stated
that he had advised Myriam of "everything" and explained "everything" to her. Montalvo
also stated that the Merrill Lynch account was discussed at the mediation and that Myriam
was dropping the claims regarding the Merrill Lynch account. The trial judge stated that
he was approving the settlement, but he did not render judgment at that time. 

 The next day, February 7, 2006, Myriam filed a Motion to Set Aside Mediated
Settlement and Alternative Motion for New Trial. The motion stated that Myriam validly
exercised her right to revoke the agreement prior to the court's rendition of judgment. 
Alternatively, if the court rendered judgment, she requested a new trial on the same
grounds. The trial court signed a final decree of divorce on February 14, 2006, rendering
judgment on the settlement agreement. 

 The trial court held a hearing on March 1, 2006 on the Motion to Set Aside Mediated
Settlement and Alternative Motion for New Trial. At the hearing, Myriam again testified that
she did not know the agreement was irrevocable, that she did not sign the first two pages
of the agreement, and that she did not see those pages until after she arrived home from
the mediation. In opposition, Jorge testified that Myriam and Montalvo signed the
agreement first. He stated that after Myriam signed, the agreement was presented to him
with all five pages stapled together. 

 

 Additionally, after being instructed by the court to testify, Montalvo testified that he
was present when Myriam signed the agreement. Montalvo stated that the documents
were presented to Myriam in two separate stacks which were not stapled; however, she
had all five pages when she signed. He further stated that he reviewed the entire contract
before he signed it himself. 

 After hearing the evidence, the trial court denied the Motion to Set Aside Mediated
Settlement and Alternative Motion for New Trial. Myriam requested findings of fact and
conclusions of law without any recommendations as to what the court should find. The trial
court then entered the following findings of fact relevant to the present appeal:

 3. The Mediated Settlement Agreement Incident to Divorce, which was
signed by each party and each party's attorney, provided in boldfaced
type, capital letters, and underlined as follows:

 

 THIS AGREEMENT IS NOT SUBJECT TO REVOCATION

 

 4. The Mediated Settlement Agreement Incident to Divorce, which was
signed by each party and each party's attorney settled all pending
issues in this cause.

 

 8. There was no fraud perpetrated against the Respondent prior to or at
the time of her signing the Mediated Settlement Agreement Incident
to Divorce.

 

 10. The Mediated Settlement Agreement Incident to Divorce was not
subject to revocation after it was signed by both parties and their
attorney's [sic] of record.

 

 12. No good cause exists for the Court to set aside the mediated
settlement agreement signed by the parties and their attorneys.

 

 13. No good cause exists for the Court to grant a new trial.

 

 14. Respondent presented no evidence warranting the setting aside of
the mediated settlement agreement or the granting of a new trial. 



Based on these fact findings, the trial court issued conclusions of law, stating that the MSA
was a binding, valid, and enforceable agreement that was irrevocable. Myriam did not
object or request additional findings. This appeal ensued.

II. Revocation of the MSA

 In issues one through four, Myriam argues that the trial court erred in rendering
judgment on the MSA after she revoked her consent to the agreement in open court. 
Issues one and two challenge the judgment itself; issue three challenges the factual
sufficiency of findings of fact numbers 3, 4, 10, 12, 13, and 14 supporting non-revocability
of the MSA, and issue four challenges the trial court's conclusions of law. 

A. Standard of Review

 Myriam attacks the judgment itself as well as the findings of fact and conclusions
of law relating to her ability to revoke the MSA before judgment. When appealing a trial
court's judgment after a non-jury trial, attacks on the sufficiency of the evidence should be
directed at specific findings of fact rather than at the entire judgment. Carter v. Carter, 736
S.W.2d 775, 777 (Tex. App.-Houston [14th Dist.] 1987, no writ). Because Myriam contests
the factual sufficiency of the evidence to support the findings of fact, essentially raising the
same argument that she does generally against the judgment, we will review her first four
issues as a challenge to the sufficiency of the fact findings. Id. (noting that general attack
on judgment was insufficient, but nevertheless reviewing sufficiency of evidence to support
findings of fact even though they had not been challenged).


 A trial court's findings of fact may be reviewed for factual sufficiency of the
evidence. (1) Nelkin v. Panzer, 833 S.W.2d 267, 268 (Tex. App.-Houston [1st Dist.] 1992,
writ dism'd w.o.j.). We apply the same standard of review to a trial court's fact findings as
we do to a jury's findings. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam).

 Jorge had the burden to establish he was entitled to judgment on the MSA by
proving that he satisfied the requirements of the family code. Zeifman v. Michels, 212
S.W.3d 582, 596 (Tex. App.-Austin 2006, pet. denied). An appellant challenging the
factual sufficiency of a finding on an issue to which the other party had the burden of proof
must demonstrate that there is insufficient evidence to support the adverse finding. Hickey
v. Couchman, 767 S.W.2d 103, 109 (Tex. App.-Corpus Christi 1990, writ denied); Raw
Hide Oil & Gas, Inc. v. Maxus Exploration Co., 766 S.W.2d 264, 275-76 (Tex.
App.-Amarillo 1988, writ denied). Under these circumstances, we first consider all of the
evidence, both in favor of and against the finding. Plas-Tex Inc. v. U.S. Steel Corp., 772
S.W.2d 442, 445 (Tex. 1989); Lofton v. Tex. Brine Corp., 720 S.W.2d 804, 805 (Tex. 1986)
(per curiam). We will set aside the finding "only if it is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust." Cain v. Bain, 709 S.W.2d 175,
176 (Tex. 1986) (per curiam). 

 The fact finder is the judge of the credibility of witnesses and weight to be accorded
their testimony. Krishnan v. Ramirez, 42 S.W.3d 205, 211 (Tex. App.-Corpus Christi 2001,
pet. denied) (citing Cain, 709 S.W.2d at 176). Because this Court is not the fact finder, we
may not substitute our own judgment for that of the trier of fact, even if a different answer
could be reached on the evidence. Id. at 212. 

 Conclusions of law will be upheld on appeal if the judgment can be sustained on any
legal theory supported by the evidence. Dep't of Pub. Safety v. Stockton, 53 S.W.3d 421,
423 (Tex. App.-San Antonio 2001, no pet.). Conclusions of law will not be reversed unless
they are erroneous as a matter of law. Id. A trial court's conclusions of law are reviewed
de novo as legal questions. State v. Heal, 917 S.W.2d 6, 9 (Tex. 1996). The reviewing
court affords no deference to the lower court's decision. Subaru of Am., Inc. v. David
McDavid Nissan, Inc., 84 S.W.3d 212, 227 (Tex. 2002). Under de novo review, the
reviewing court exercises its own judgment and redetermines each legal issue. In re C.H.,
89 S.W.3d 17, 29 (Tex. 2002) (Hecht, J., concurring); Subaru of Am., Inc., 84 S.W.3d at
222. Incorrect conclusions of law will not require a reversal if the controlling findings of fact
support a correct legal theory. BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789,
794 (Tex. 2002); Aguero v. Ramirez, 70 S.W.3d 372, 373 (Tex. App.-Corpus Christi 2002,
pet. denied). 

B. Applicable Law

 Texas Family Code section 6.602 governs mediated settlement agreements incident
to divorce, providing that if the statute's requirements are met, the mediated settlement
agreement is binding on the parties at the time it is executed:

 (b) A mediated settlement agreement is binding on the parties if the
agreement:

 

 (1) provides, in a prominently displayed statement that is in
boldfaced type or capital letters or underlined, that the
agreement is not subject to revocation;

 

 (2) is signed by each party to the agreement; and

 

 (3) is signed by the party's attorney, if any, who is present at the
time the agreement is signed.

 

 (c) If a mediated settlement agreement meets the requirements of this
section, a party is entitled to judgment on the mediated settlement
agreement notwithstanding Rule 11, Texas Rules of Civil Procedure,
or another rule of law.


TEX. FAM. CODE Ann. § 6.602 (Vernon 2006). A party to a mediated settlement agreement
meeting the requirements of section 6.602 is entitled to judgment on the agreement. Boyd
v. Boyd, 67 S.W.3d 398, 402 (Tex. App.-Fort Worth 2002, no pet.). 

 Section 6.602 creates a procedural shortcut for the enforcement of a mediated
settlement agreement in divorce cases. TEX. FAM. CODE Ann. § 6.602; Cayan v. Cayan;
38 S.W.3d 161, 166 (Tex. App.-Houston [14th Dist.] 2000, pet. denied). An agreement
pursuant to section 6.602 of the Texas Family Code is wholly different than a typical
agreement incident to divorce; an agreement under 6.602 cannot be revoked before
judgment, while any other agreement may be revoked prior to judgment: "[T]he mediated
agreement is binding and irrevocable at the time of its execution rather than at the time
divorce is rendered, the parties are entitled to judgment on it, and the trial court does not
have to determine that it is 'just and right.'" In the Matter of the Marriage of Joyner, 196
S.W.3d 883, 891 (Tex. App.-Texarkana 2006, pet. denied). "While Section 6.602 cannot
be imposed on the parties, once affirmative steps are taken to comply with that section,
neither party can repudiate the agreement." Id. at 889; see also Mullins v. Mullins, 202
S.W.3d 869, 876 (Tex. App.-Dallas 2006, pet. denied). If, however, the revocation
language was not part of the agreement, then the agreement was revocable before
judgment was rendered, and the trial court improperly rendered judgment on the MSA. 
See TEX. FAM. CODE Ann. § 6.602(c).

C. Analysis

 The trial court found the MSA fulfilled the three requirements of section 6.602, and
therefore, the MSA could not be revoked. The MSA, on its face, contained all the
requirements outlined by the Texas Family Code. TEX. FAM. CODE Ann. § 6.602. 
Nevertheless, Myriam contends that the she never saw the non-revocation language and
that no one explained it to her. 

 Myriam points to certain undisputed facts on appeal to support her argument that
the agreement she signed did not contain the non-revocation language: (1) the boilerplate
provisions containing the statement, "THIS AGREEMENT IS NOT SUBJECT TO
REVOCATION" were not signed or initialed by either party, whereas every page in Exhibit
A containing the property settlement was signed or initialed; and (2) the document was
presented to Myriam in two separate stacks, which were not stapled together. Myriam
further argues that she never agreed to the non-revocation language. 

 To the contrary, Jorge argues that the trial court's finding that the agreement was
irrevocable was supported by his testimony, Montalvo's testimony, and Myriam's testimony. 
First, Montalvo testified that he explained "everything" to Myriam. He testified that he
heard the mediator direct statements to Myriam regarding the nature of revocation in
regards to mediated settlement agreements. Montalvo also testified that, prior to signing
the MSA, he reviewed the entire MSA that was filed with the trial court, which included the
two pages at issue. Second, Myriam admitted that prior to leaving the mediation, she was
given the two pages at issue. Third, Jorge testified that when the MSA was handed to him
all of the pages were stapled together. The trial judge, as sole arbiter of the facts, was
entitled to disbelieve Myriam's testimony and believe the testimony of others that the
necessary language was in the document when it was signed. See Ward v. Nava, 488
S.W.2d 736, 740 (Tex. 1972); see also Wal-Mart Stores, Inc. v. Amos, 79 S.W.3d 178, 192
(Tex. App.-Texarkana 2002, no pet.). We hold that the trial court's findings of fact that the
nonrevocation language was contained in the agreement Myriam signed and that the
agreement was, therefore, not subject to revocation were not so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.

 Furthermore, we note that Myriam does not dispute that the entire agreement was
on the table when she signed the last three pages; rather, she merely argues that she
never saw the first two pages. Parties are obligated to protect themselves by reading a
contract prior to signing it. G-W-L, Inc. v. Robichaux, 643 S.W.2d 392, 393 (Tex. 1982),
overruled on other grounds sub. nom. by Melody Homes Mfg. Co. v. Barnes, 741 S.W.3d
349 (Tex. 1987). In the absence of fraud, a person who signs a contract without reading
it does so at his or her own peril, and the failure of the other party to explain the terms is
no excuse. Id.; see also In re FirstMerit Bank, 52 S.W.3d 749, 758 (Tex. 2001) (holding
plaintiff could not escape arbitration agreement by claiming that other party failed to explain
the agreement). 


 Because we find that the evidence was factually sufficient to support the trial court's
finding that Myriam signed an irrevocable mediated settlement agreement, we overrule
Myriam's first three issues. The trial court's conclusions of law, concluding that the MSA
was binding on the parties and is irrevocable, were correct because the evidence
demonstrated that the MSA complied with Texas Family Code section 6.602. Accordingly,
we also overrule Myriam's fourth issue.

III. Fraudulent Inducement

 In issues five and six, Myriam contends that the court erred in rendering judgment
on the MSA because she established fraud in the inducement. Issue five attacks the
judgment itself, while issue six challenges the factual sufficiency of the evidence supporting
the trial court's finding of fact number 8 that Jorge did not commit fraud. 

A. Standard of Review

 Given our holding above that the MSA is valid on its face, it is binding and
irrevocable. TEX. FAM. CODE Ann. § 6.602. The only exception is when a party establishes
illegality, fraud, duress, or coercion. Joyner, 196 S.W.3d at 892. Here, Myriam asserts
fraud by nondisclosure. (2) The elements of fraud by nondisclosure are: (1) a duty to disclose
material information, (2) the failure to disclose such information with the intent that the
other party should act, (3) reliance on the nondisclosure, and (4) injury. In re FirstMerit,
52 S.W.3d at 758; Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 181 (Tex.
1997). 

 When a trial court makes a general finding on a claim or defense, but does not
expressly make a factual finding as to each element of that claim or defense, we presume
all findings necessary to support the judgment and which are supported by some evidence. 
Tex. R. Civ. P. 299; Burnside Air Conditioning & Heating, Inc. v. Young Corp., 113 S.W.3d
889, 893 (Tex. App.-Dallas 2003, no pet.) (holding that factual findings on elements of
contract formation would be presumed where court made general finding that contract
existed). Rule 299 provides:

 When findings of fact are filed by the trial court they shall form the basis of
the judgment upon all grounds of recovery and of defense embraced therein.
The judgment may not be supported upon appeal by a presumed finding
upon any ground of recovery or defense, no element of which has been
included in the findings of fact; but when one or more elements thereof have
been found by the trial court, omitted unrequested elements, when supported
by evidence, will be supplied by presumption in support of the judgment.
Refusal of the court to make a finding requested shall be reviewable on
appeal.


Id. 

 When a trial court finds against a party on a claim or defense for which that party
held the burden of proof at trial, on appeal, the party must challenge the trial court's
adverse finding on every element of that claim or defense. Wisenbarger v. Gonzales
Warm Springs Rehabilitation Hosp., Inc., 789 S.W.2d 688, 694 (Tex. App.-Corpus Christi
1990, writ denied) (plaintiff's challenge to adverse liability findings, where plaintiff failed to
also challenge adverse damages finding, required court of appeals to affirm take-nothing
judgment). A challenge to a trial court's adverse finding on only one element of the claim
or defense does not provide a court of appeals with reversible error. Id. 


 As stated above, we will consider Myriam's challenge to the judgment itself as a part
of her challenge to the trial court's fact findings. Carter v. Carter, 736 S.W.2d 775, 777
(Tex. App.-Houston [14th Dist.] 1987, no writ). Myriam had the burden at trial of proving
the alleged fraudulent inducement. Jistel v. Tiffany Trail Owners Ass'n, 215 S.W.3d 474,
480 (Tex. App.-Eastland 2006, no pet.) (citing Brown v. Zimmerman, 160 S.W.3d 695, 702
(Tex. App.-Dallas 2005, no pet.)). Under these circumstances, an appellant challenging
a finding on an issue upon which that party had the burden of proof must demonstrate that
"the adverse finding is against the great weight and preponderance of the evidence." Dow
Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam) (citing Croucher v.
Croucher, 660 S.W.2d 55, 58 (Tex. 1983)). 

 In reviewing a challenge that the finding is against the great weight and
preponderance of the evidence, we first examine the record to determine if there is some
evidence to support the finding. Id. If evidence exists to support the finding, then we must
determine, in light of the entire record, whether the finding is so contrary to the
overwhelming weight and preponderance of the evidence as to be clearly wrong and
manifestly unjust or whether the great preponderance of the evidence supports a contrary
finding. Id. at 241 (citing Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986),
overruled on other grounds by Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378 (Tex. 2000)).

B. Analysis

 Myriam argues that Jorge had a duty to disclose all the parties' community assets,
but Jorge did not disclose a million-dollar Merrill Lynch account that he put in his sister's
name. She attacks the factual sufficiency of the trial court's finding of fact number 8, which
found that "[t]here was no fraud perpetrated against the Respondent prior to or at the time
of her signing the Mediated Settlement Agreement Incident to Divorce." 

 The record supports implied findings against Myriam on the reliance element of her
fraud claim. First, although Myriam requested findings of fact and conclusions of law, the
record does not reflect that she provided the trial court with proposed findings of fact that
included every element of her fraud claim. Second, the record does not reflect that Myriam
objected to the trial court's failure to make fact findings on every element of her fraud
claim. Because under these circumstances we may imply findings that support the
judgment if they are supported by evidence, we now turn to the record. Tex. R. Civ. P. 299;
Burnside Air Conditioning & Heating, Inc. v. Young Corp., 113 S.W.3d at 893. 

 The record shows that, at the February 6, 2006 hearing, Myriam appeared before
the trial court attempting to revoke the MSA, stating as her reason that

 [t]here is a lot of money there that was not put on the table. And I was told
that that money would not be put on the table because my husband had
given a million dollars as a gift to his sister, and since it was a gift, it was not
put on the table. It was explained to me.


Jorge's counsel then told the trial court that the account was discussed extensively in
discovery prior to the mediation. Jorge's counsel stated that at the mediation, Myriam
agreed to release her claim to the Merrill Lynch account in exchange for allocating several
buildings to Myriam as her separate property, which Jorge confirmed. Jorge then testified
under oath that the account was discussed "ad infinitum" and "ad nauseam." Because this
constitutes some evidence that Myriam did not rely on Jorge's alleged failure to disclose
the Merrill Lynch account, we may presume that the trial court found that Myriam did not
rely on the purported nondisclosure, which is an element of her fraud claim. 

 Myriam's brief argues against only the implied findings of a duty to disclose and a
breach of that duty. Myriam's brief, however, does not challenge the trial court's implied
finding that Myriam did not rely on the alleged nondisclosure in settling the claim. 
Accordingly, we are required to affirm the trial court's judgment. Wisenbarger, 789 S.W.2d
at 694. 

 Moreover, Myriam appears to argue that there is factually insufficient evidence to
support a finding that Jorge disclosed the Merrill Lynch account. This contention is without
merit. Myriam conceded in open court that the Merrill Lynch account was discussed at the
mediation and that it was used as a bargaining chip. Additionally, Myriam filed a counter-claim against Jorge, prior to the mediation, raising allegations of fraud related to the very
same Merrill Lynch account. The trial court's implied finding that Jorge disclosed the
account is not so contrary to the overwhelming weight and preponderance of the evidence
as to be clearly wrong or unjust, nor does the great preponderance of the evidence show
that the account was not disclosed. We overrule Myriam's fifth and sixth issues. 

IV. Conclusion


 For all the foregoing reasons, we affirm the trial court's judgment enforcing the
mediated settlement agreement.


 __________________________ 

 GINA M. BENAVIDES,

 Justice

 


Memorandum Opinion delivered and filed

this the16th day of August, 2007.

1. We note that Myriam asserts on appeal that the appropriate standard of review for findings of fact
is set forth in Zagorski v. Zagorski:

 

 In a factual sufficiency review, we consider all of the evidence and must determine not
whether the trier of fact could reasonably conclude that existence of the fact is more probable
than not, as in ordinary civil cases, but whether the trier of fact could reasonably conclude
that the existence of the fact is highly probable. 


116 S.W.3d 309, 314 (Tex. App.-Houston [14th Dist.] 2003, pet. denied). Myriam misplaces her reliance on
Zagorski. The burden of proof at trial in Zagorski  was by "clear and convincing evidence," which is a higher
standard than the instant case. Id. Thus, the standard of review at the appellate level was higher. Id. The
clear and convincing standard is only applicable to limited situations, which do not include the instant case. 
See W. Wendell Hall, Standard of Review in Texas, 38 ST. MARY'S L.J. 47, 288 (2006) (enumerating the cases
in which the "clear and convincing" standard applies).
2. We note that, on appeal, Jorge asserts that Myriam did not preserve the fraud complaint for review. 
We disagree. Myriam made it clear to the trial court at the first hearing that she thought she had been
fraudulently induced into agreeing to the settlement. Tex. R. App. P. 33.1(a)(1)(A).